1  HEATHER E. WILLIAMS, #122664
   Federal Defender
2  MEGAN T. HOPKINS, #294141
   VICTOR M. CHAVEZ, #113752
3  Assistant Federal Defenders
   Designated Counsel for Service
4  2300 Tulare Street, Suite 330
   Fresno, CA  93721-2226
5  Telephone: 559-487-5561/Fax: 559-487-5950

6  Attorneys for Defendant
   ASHLEY MADDOX

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )  Case No.  1:17-mj-104 SAB
                                     )
12                   Plaintiff,      )  DEFENDANT'S MOTION FOR REVOCATION
                                     )  OF DETENTION ORDER; EXHIBITS A-B
13  vs.                              )
                                     )
14  ASHLEY MADDOX,                   )
                                     )
15                   Defendant.      )
                                     )
16                                   )
                                     )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................2

    I.    INTRODUCTION ........................................................................2

    II.   STANDARD OF REVIEW ...........................................................3

    III. ARGUMENT .................................................................................3

         A.     Because There Exists a Combination of Conditions that
This Court Can Fashion that Will Reasonably Assure
Ms. Maddox's Appearance as Required and the Safety
of the Community, the Bail Reform Act Mandates that
this Court Release Ms. Maddox Pending Trial...................................3

               1.       Ms. Maddox has Rebutted the § 3142(e)(3)
Presumption With Credible Evidence that She
Represents Neither a Serious Flight Risk Nor a
Danger to the Community. ...................................................4

               2.       Ms. Maddox Must Be Released on Her Own
Recognizance Unless the Government Can Establish
that She Represents a Serious Risk of Flight or
Particularized Future Danger..............................................7

               3.       Given the Totality of the Circumstances, the
Government Cannot Satisfy Its Heavy Burden of
Establishing that There are No Conditions this Court
Can Fashion that Will Reasonably Assure Ms.
Maddox's Appearance as Required.................................10

               4.       Given the Totality of the Circumstances, the
Government Cannot Satisfy Its Heavy Burden of
Establishing that there are No Conditions this Court
Can Fashion that Will Reasonably Assure the Safety
of the Community............................................................10

IV.  CONCLUSION..........................................................................14

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE</u>

### FEDERAL CASES

3

4
*Stack v. Boyle*
5
342 U.S. 1 (1951)..................................................................................................9

6
*United States v. Beckett*
2011 U.S. Dist. LEXIS 49414 (N.D. Cal. 2011) .............................................13
7

8
*United States v. Bright*
2009 U.S. Dist. LEXIS 5399 (N.D. Cal. 2009) ...............................................13

9
*United States v. Chen*
10
820 F. Supp. 1205 (N.D. Cal. 1992) ............................................................4, 7

11
*United States v. Conway*
2011 U.S. Dist. LEXIS 86034 (N.D. Cal. 2011) ...........................................4, 8
12

13
*United States v. Dang*
2013 U.S. Dist. LEXIS 112758 (N.D. Cal. 2013)  ...................................5, 9, 12

14
*United States v. Himler*
15
797 F.2d 156 (3d Cir. 1986)...........................................................................8

16
*United States v. Hir*
17
517 F.3d 1081 (9th Cir. 2008) ..............................................................3, 4, 8, 9

18
*United States v. Honeyman*
470 F.2d 473 (9th Cir. 1972) ..........................................................................9
19

20
*United States v. Koening*
912 F. 2d 1190 (9th Cir. 1990) ........................................................................3

21
*United States v. Motamedi*
22
767 F.2d 1403 (9th Cir. 1985) ...............................................................9, 11, 12

23
*United States v. Salerno*
24
481 U.S. 739 (1987)...........................................................................7, 9, 10, 11

25
*United States v. Sanchez*
2011 U.S. Dist. LEXIS 22395 (C.D. Cal. 2011) .............................................13
26

27
*United States v. Scott*
450 F.3d 863 (9th Cir. 2006) ..............................................................8, 9, 11, 13

28

1

## TABLE OF AUTHORITIES (*Cont'd.*)

2
**PAGE**

### FEDERAL CASES (*cont'd.*)

3

4
*United States v. Townsend*

5
897 F.2d 989 (9th Cir. 1990) ........................................................................7, 12

6

### FEDERAL CODES AND REGULATIONS

7

8
**United States Code**

9
18 U.S.C. § 2251(a) ......................................................................................2, 4

10
18 U.S.C. § 2252(a) ......................................................................................2, 4

11
18 U.S.C. § 3141 ..........................................................................................3, 10

12
18 U.S.C. § 3142 ............................................................................... *passim*

13
18 U.S.C. § 3145(b) ................................................................................2, 4, 15

14
**Federal Rules of Criminal Procedure Rule**

15
12(b)(2) ...............................................................................................................2

16
**Eastern District Local Rule**

17
Crim 16-440 .......................................................................................................2

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that as soon as this matter can be scheduled pursuant to the mandate of 18 U.S.C. § 3145(b) that a motion for revocation "shall be determined promptly" before the assigned District Judge, defendant Ashley Maddox, by and through her counsel of record, will and does hereby move this court for an order revoking the detention order issued June 23, 2017, pursuant to 18 U.S.C. § 3145(b).

This motion is made pursuant to the United States Constitution; Federal Rules of Criminal Procedure, Rule 12(b)(2); Eastern District of California Local Rule Crim 16-440; and all applicable statutory and case law.

This motion is supported by this Notice of Motion; the Memorandum of Points and Authorities; the attached exhibits; the files and records of this case; and such argument and further law and evidence as may be presented at the time of the hearing.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Dated: July 7, 2017

/s/ *Megan T. Hopkins*
MEGAN T. HOPKINS
VICTOR M. CHAVEZ
Assistant Federal Defenders
Attorneys for Defendant
ASHLEY MADDOX

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 21, 2017 Ashley Maddox made her initial appearance on a criminal complaint charging her with violations of 18 U.S.C. §§2251(a) and 2252(a), and alleging that Ms. Maddox engaged in sexual exploitation of a minor and received and/or distributed sexually explicit material involving a minor.  Ms. Maddox entered not guilty pleas to the two counts filed against her.  At the request of counsel for Ms. Maddox, the detention hearing was scheduled for June 23, 2017.

On June 23, 2017, an initial detention hearing was held in magistrate court.  The Pretrial Services Officer recommended release on conditions, including two potential third-party custodians, Cameron Hall and Jennifer Reeves (Ms. Maddox's boyfriend and sister, respectively), participation in counselling, home confinement/location monitoring, and a number of other conditions such as travel, residency, and employment restrictions.  A rebuttable presumption applied in this case that no condition or combination of conditions will reasonably assure appearance as required and the safety of the community. Ms. Maddox sufficiently rebutted the presumption by way of credible evidence that she has no criminal history, had been employed for the past 8 years until June of this year, has significant ties to the community here in the Eastern District of California, does not have any access to her own or anyone else's children, and has an intervening period of positive conduct between the alleged period of illegal activity and today.

The court found that Ms. Maddox did not pose a risk of flight.  However, without explaining why the proposed conditions were inadequate to reasonably protect the community, or why, if the court deemed Pretrial's proposed conditions inadequate, there was no combination of conditions that could reasonably protect the community, the magistrate ordered Ms. Maddox detained on the basis of danger.

Under the totality of the circumstances, including the presumption of innocence, Ms. Maddox represents neither a serious risk of non-appearance nor a danger to the community.

Even if the Court were to disagree, there are conditions that can be fashioned that would

reasonably assure Ms. Maddox's appearance and the safety of the community, and Pretrial Services has recommended a possible combination of conditions sufficient to support release under the Bail Reform Act.  Accordingly, Ms. Maddox was improperly ordered detained under 18 U.S.C. § 3142, and, pursuant to 18 U.S.C. § 3145(b), she moves this Court for an order revoking the detention order and releasing her on her own recognizance pending trial in this matter.

## II.  STANDARD OF REVIEW

A district court reviews *de novo* a magistrate judge's detention order under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*.  *United States v. Koening*, 912 F. 2d 1190, 1191 (9th Cir. 1990).  The district court is free to consider whatever evidence is presented at the revocation hearing and may hold additional evidentiary hearings if necessary.  *Id*. at 1193.  The district court's review of the magistrate's detention order is to be conducted "without deference to the magistrate's factual findings" and "without deference to the magistrate's ultimate conclusion."  *Id*. at 1192-93.

## III.  ARGUMENT

**A.    Because There Exists a Combination of Conditions that This Court Can Fashion that Will Reasonably Assure Ms. Maddox's Appearance as Required and the Safety of the Community, the Bail Reform Act Mandates that this Court Release Ms. Maddox Pending Trial.**

Ms. Maddox must be released pretrial if there is *any* condition or combination of conditions that "will *reasonably assure* [her] appearance . . . as required or . . . the safety of any other person or the community."  § 3142(b).  *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("The Act mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' 18 U.S.C. § 3142(e).").

The Bail Reform Act requires that this Court first evaluate, based on certain factors specified at § 3142(g), whether releasing Ms. Maddox on her own recognizance is sufficient to reasonably assure (1) her appearance as required and (2) the safety of any other person and the

community.  § 3142(a).

**1.  Ms. Maddox has Rebutted the § 3142(e)(3) Presumption With
Credible Evidence that She Represents Neither a Serious Flight
Risk Nor a Danger to the Community.**

Pursuant to 18 U.S.C. § 3142(g), this Court must consider the nature and circumstances of the offense charged, including whether the charged offense raises a rebuttable presumption that there are no conditions a court can fashion that would reasonably assure the defendant's appearance and the safety of the community.  Because Ms. Maddox is charged with an offense involving a minor victim under §§2251(a) and 2252(a), there is a rebuttable presumption.  18 U.S.C. § 3142 (e)(3)(E).

However, the presumption is readily rebutted with some credible evidence that the defendant does not pose a serious flight risk and will not pose a danger to the community.  *Hir*, 517 F.3d at 1086; *Conway*, 2011 U.S. Dist. 86034 (noting that the rebuttable presumption "is fairly easily met").  The rebuttable presumption merely creates an initial burden of production on the defendant.  *Hir*, 517 F.3d at 1086.  The burden of persuasion to establish by a clear preponderance of the evidence that an individual poses a serious risk of flight, and by clear and convincing evidence that the defendant poses a particularized future threat to a specific individual or community, remains at all times with the government.  *Id*.  If the defendant proffers some credible evidence that she does not pose a serious risk of flight nor a future particularized danger to a specific individual or community, the presumption is rebutted.  *Id*. Once the defendant rebuts the presumption, the burden is on the government to establish that there are absolutely no conditions or combination of conditions the Court can fashion that will reasonably assure the defendant's appearance and the safety of the community.  *See, e.g.*, *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("The government's burden of proof is not trivial. If the defendant can rebut the statutory presumption, the government must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant.").

Ms. Maddox has readily rebutted the presumption.  Ms. Maddox is 30 years old.  She has lived continuously in the Fresno / Clovis / Madera area for her entire life.  Her travels have been

1   very limited, and she has never obtained a passport.  Her family resides in the Fresno area.  She

2   has a tremendous amount of support from her family, including her mother, sister, and boyfriend,

3   who have attended all of her court appearances.

4          Ms. Maddox shares a very close bond with her sister, Jennifer Reeves, who lives in

5   Fresno. They shared an apartment together before Ms. Maddox moved in with her boyfriend,

6   Cameron Hall.  Ms. Maddox and her sister talk on the phone weekly, spend time with each other

7   on weekends, and confide in one another.  For Ms. Maddox, her sister is her lifeline, as is Mr.

8   Hall.  *See, e.g.*, *United States v. Dang*, 2013 U.S. Dist. LEXIS 112758, 11-12 (N.D. Cal. 2013)

9   ("A defendant's ties to the community that are most significant are the 'sort of family ties from

10  which [a court] . . . can infer that a defendant is so deeply committed and personally attached that

11  [s]he cannot be driven from it by the threat of a long prison sentence.'").  Ms. Reeves has offered

12  and is being proposed as a third-party custodian for Ms. Maddox.  Both the Pretrial Officer and

13  counsel have discussed with her the obligations as a third-party custodian. She clearly

14  understands and accepts those obligations.  Pretrial has confirmed that she has no criminal

15  history or substance abuse issues, and is qualified to serve as the third-party custodian in this

16  case.

17         Ms. Maddox no longer has custody of her two children, nor do any children reside in the

18  suitable residence proposed by Pretrial Services.  A restraining order has been put in place

19  preventing Ms. Maddox from visiting with or contacting her daughter[1], and the other parent of

20  her son will not permit any visitation while her case is pending.  Mr. Hall, who lives with Ms.

21  Maddox, has arranged for his own children that all visits will take place away from the home and

22  outside of Ms. Maddox's presence.[2]  Accordingly, Ms. Maddox will not live with nor have an

23  opportunity to visit the children in her life while this matter is pending.

24         Mr. Hall has offered his home as a suitable residence, free from the presence of children,

25  without internet connectivity, and far from schools or playgrounds.  Mr. Hall is able to provide

26  for both himself and Ms. Maddox due to his employment with Certainteed as a factory worker,

27

28
---
[1] *See* Exhibit A: Restraining Order
[2] *See* Exhibit B: Letter from Cameron Hall to PreTrial Services on June 22, 2017.

where he has been employed for the past three years.  Furthermore, Mr. Hall has offered and is being proposed as a third-party custodian, jointly with Ms. Reeves, for Ms. Maddox.  Both the Pretrial Officer and counsel have discussed with him his obligations as a third-party custodian, which he clearly understands and accepts.  Pretrial has confirmed that he has no criminal history or substance abuse issues, and is qualified to serve as the third-party custodian in this case.

Mr. Hall first met Ms. Maddox in June of 2016, approximately six months after her last contact with the individual in Florida with whom she is alleged to have exchanged illegal material.  By the time she began her courtship with Mr. Hall, Ms. Maddox had completely disassociated from the negative influences in her life and recommitted to a positive, healthy relationship.  Mr. Hall remains a very positive force in Ms. Maddox's life, and continues to show her love and support as she confronts these allegations.  Despite the initial shock of Ms. Maddox's sudden arrest and learning the nature of the allegations, Mr. Hall reached out to Ms. Maddox while she was at Madera County Jail to let her know that he would stand beside her during this difficult chapter and that the connection they share is enduring.  This speaks not only to the support Ms. Maddox has in her home and community, but also to the person she is today being very different from the picture painted in the Complaint.

Ms. Maddox has no criminal history, apart from traffic matters.  Ms. Maddox has never before spent time in jail or prison.  She had never been in handcuffs prior to her arrest on June 5, 2017 in the instant case.  Ms. Maddox has established herself as a reputable Financial Services Representative at the Educational Employees Credit Union in Fresno, where she has worked for the past eight years.  She was recently promoted from a level II to a level III, which is the highest level representative position at the credit union and is one step below management.  Her position was terminated upon her arrest, however she is able to continue working elsewhere should a condition of employment be deemed necessary.

Ms. Maddox has presented more than just some credible evidence that she neither presents a risk of non-appearance nor a danger to the community; the presumption is rebutted and the burden is on the government to establish that Ms. Maddox is either a flight risk or a danger, and that there are absolutely no conditions this Court can fashion that will reasonably

1   assure her appearance and the safety of the community -- a burden the government cannot carry

2   here.

3          **2.   Ms. Maddox Must Be Released on Her Own Recognizance Unless the
               Government Can Establish that She Represents a Serious Risk of Flight or
4              Particularized Future Danger**

5          With respect to the first prong of the analysis, the government initially bears the burden

6   of establishing by a "clear preponderance of the evidence" that Ms. Maddox presents a serious

7   risk of non-appearance, which means that if it is a close call and the evidence cuts both ways --

8   this Court must find that the government has not met its burden.  *United States v. Townsend*, 897

9   F.2d 989, 994 (9th Cir. 1990).  *See, e.g.*, *Chen*, 820 F. Supp. at 1208 ("The Ninth Circuit's

10  'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips

11  the scales slightly' test applied in civil cases.  To give effect to the principle that doubts

12  regarding the propriety of release be resolved in favor of the defendant, the court is to rule

13  against detention in close cases, applying a 'clear preponderance' test.").

14         With respect to the second prong of the analysis, the government bears the burden of

15  establishing by clear and convincing evidence that Ms. Maddox represents a future "identified

16  and articulable threat to an individual or the community."  *United States v. Salerno*, 481 U.S.

17  739, 751 (1987).  If the government does not establish by a clear preponderance of the evidence

18  that Ms. Maddox presents a serious risk of non-appearance or by clear and convincing evidence

19  that Ms. Maddox presents a particularized future danger, this Court must release Ms. Maddox on

20  her personal recognizance or an unsecured appearance bond.  18 U.S.C. § 3142(b).

21         If, based on the factors set forth in subsection (g), this Court determines that the

22  government has satisfied its burden of persuasion with respect to non-appearance or future

23  danger, this Court must release Ms. Maddox subject to the least restrictive additional conditions

24  that will reasonably assure her appearance as required and the safety of any other person and the

25  community.  18 U.S.C. § 3142(c).  If the government opposes release entirely, then it (1) bears

26  the burden of establishing by a clear preponderance of the evidence that there are no conditions

27  or combination of conditions that will reasonably assure Ms. Maddox's appearance as required

28  or (2) bears the burden of establishing by clear and convincing evidence that there are no

conditions or combination of conditions that will reasonably assure the safety of the community

from whatever particularized future danger has been established.  Any close call mandates

release subject to the proposed conditions.

The ultimate question is whether there are conditions that can be fashioned -- such as the

ones Pretrial has proposed -- that would reasonably assure the individual's appearance and the

safety of the community.  *See, e.g., Hir*, 517 F.3d at 1091-92 (explaining that even where a

defendant poses a danger, the court still must release him/her if there are a combination of

conditions that would reasonable assure the safety of the community); *United States v. Scott*, 450

F.3d 863, 874 (9th Cir. 2006) (cautioning that a district court can only impose conditions on

release if they are necessary to address a defendant's demonstrated "heightened risk of

misbehaving while on bail"); *United States v. Conway*, 2011 U.S. Dist. LEXIS 86034 (N.D. Cal.

2011) (releasing defendant charged with harboring a minor for use in a commercial sex act

notwithstanding his extensive criminal history, lack of steady employment and use of narcotics,

because there were conditions the court could fashion given his strong family ties, life long

residence in the community and lack of foreign travel that would reasonably assure his

appearance and the safety of the community).  "The purpose of a Section 3142(e) risk of flight

determination . . . is not to detain habitual criminals or deceitful persons; it is to secure the

appearance of the accused at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).

Notably, "reasonably assure" does not mean "guarantee."  *See, e.g., Hir*, 517 F.3d at 1092

n.9 ("Undoubtedly, the safety of the community can be reasonably assured without being

absolutely guaranteed . . . . Requiring that release conditions guarantee the community's safety

would fly in the teeth of Congress' clear intent that only a limited number of defendants be

subject to pretrial detention.") (internal citation omitted).

The government bears a heavy burden to establish that no conditions of release exist that

would reasonably assure Ms. Maddox's appearance and the safety of the community.  "[F]ederal

law has unequivocally provided that a person arrested for a non-capital offense shall be admitted

to bail.  This traditional right to freedom before conviction permits the unhampered preparation

of a defense, and serves to prevent the infliction of punishment prior to conviction. . .  Unless

1   this right to bail before trial is preserved, the presumption of innocence, secured only after

2   centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

3          Upholding the Bail Reform Act, the Supreme Court explained that "in our society

4   liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."

5   *Salerno*, 481 U.S. at 755.  The Court cautioned that the Bail Reform Act should not be used by

6   the lower courts as "a scattershot attempt to incapacitate those who are merely suspected of these

7   serious crimes." Id. at 741.   Consequently, the Ninth Circuit has repeatedly emphasized that,

8   "only in rare circumstances should release be denied [and] . . . Doubts regarding the propriety of

9   release should be resolved in favor of the defendant."  *United States v. Motamedi*, 767 F.2d

10  1403, 1405 (9th Cir. 1985); see, e.g., *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir.

11  1972) ("The whole spirit of the Bail Reform Act, 18 U.S.C. § 3146, et seq., is that a defendant

12  facing trial should be released, rather than detained, unless there are strong reasons for not

13  releasing him.").

14          Only in the rare cases where a judicial officer finds by a clear preponderance of

15  the evidence that no condition or combination of conditions will reasonably assure the

16  appearance of the person as required and/or by clear and convincing evidence that there is no

17  condition or combination of conditions that will reasonably assure the safety of any other person

18  and the community, should the officer order the detention of the person before trial.  § 3142(e);

19  *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006);  *Hir*, 517 F.3d at 1086, 1091-92; *Dang*,

20  2013 U.S. Dist. LEXIS 112758 (observing that while the defendant "poses a certain danger to the

21  community and risk of flight, that is true in just about every case" and "if the mandate that close

22  calls are to be resolved against detention means anything, [the defendant] must be released on the

23  extremely restrictive conditions set by the court").

24  //

25  //

26  //

27  //

28

Maddox's Motion to Revoke Detention Order          -9-

3. **Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that There are No Conditions this Court Can Fashion that Will Reasonably Assure Ms. Maddox's Appearance as Required.**

In addition to the exceptionally strong family ties that Ms. Maddox has binding her to Fresno, she has lived in the area for her entire life, has never traveled any substantial distance, and does not have a passport.  Ms. Maddox does not have ties to any community outside of the Eastern District of California.  At the initial detention hearing, the government did not bother to address the issue of flight, as they seemingly conceded that there was no basis to find Ms. Maddox a flight risk.  The magistrate judge agreed that Ms. Maddox did not pose a risk of flight.

The Pretrial Services Officer recommended a combination of conditions that would reasonably assure Ms. Maddox's appearance, even if flight were a concern.  Pretrial Services recommended two joint third-party custodians who would be responsible for observing Ms. Maddox, verifying that she was on compliance with the conditions of release, remained in her residence as required, and appeared in court as required.  Additionally, Pretrial Services recommended home confinement coupled with location monitoring to assure that Ms. Maddox would not be able to leave her home without prior approval and only then in limited circumstances (such as to appear in court as required).

Given the totality of the circumstances, the conditions that Pretrial Services has proposed (including location monitoring and two reputable third-party custodians) reasonably assure that Ms. Maddox will appearance as required.

4. **Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that there are No Conditions this Court Can Fashion that Will Reasonably Assure the Safety of the Community.**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, limits the power of the court to deny pretrial release to only the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." 1984 Code Cong. & Ad. News at 3189 (emphasis added); *see Salerno*, 481 U.S. at 742 (explaining that the judicial officer who presides over a detention hearing "is not given unbridled discretion

1   in making the detention determination.  Congress has specified the considerations relevant to the

2   decision.")

3          The Supreme Court upheld the Bail Reform Act in *United States v. Salerno* because the

4   Act narrowly provides for the pretrial detention of only a small subset of particularly dangerous

5   defendants with stringent safeguards to protect the fundamental liberty interest of the innocent,

6   who, given the presumption of innocence, includes those individuals with pending charges.

7   *United States v. Salerno*, 481 U.S. 739, 750-51 (1987); *c.f. Salerno*, 481 U.S. 739, 767 (Marshall,

8   J., dissenting) ("The presumption of innocence protects the innocent; the shortcuts we take with

9   those whom we believe to be guilty injure only those wrongfully accused and, ultimately,

10  ourselves.").  Unfortunately, those safeguards were not followed here; if they had been, Ms.

11  Maddox would not have been improperly detained.

12         "The mere fact that the defendant is charged with a crime cannot be used as a basis for a

13  determination of dangerousness."  *Scott*, 450 F.3d at 874 n.15.  As the Ninth Circuit explained,

14  simply because an individual is charged with committing offenses, in the face of the presumption

15  of innocence, it cannot be presumed based on the pending charges that the defendant is any more

16  likely than other members of the public to commit offenses in the future.  *Id*. at 874.

17         That an individual is charged with a crime cannot, as a constitutional matter,
           give rise to any inference that he is more likely than any other citizen to
18         commit a crime if he is released from custody. Defendant is, after all,
           constitutionally presumed to be innocent pending trial, and innocence can
19         only raise an inference of innocence, not of guilt.

20  *Id*.  Concerned that courts might be tempted to detain individuals based on the charges being

21  alleged against them, Congress explicitly reiterated the constitutional presumption of innocence

22  in the Bail Reform Act, mandating that "nothing in [the Bail Reform Act] shall be construed as

23  modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  The "corollary" of

24  the presumption of innocence is "that the right to bail should be denied only for the strongest of

25  reasons."  *Motamedi*, 767 F.2d at 1407.

26         Congress could not have been clearer that, when it instructed courts to look at the weight

27  of the evidence against a defendant, this analysis is not for the purpose of determining whether

28  the defendant committed the offense as charged.  Indeed, it is impermissible for the court to use

1   proffered evidence at a detention hearing to make a preliminary determination of guilt and detain

2   an individual based on the likelihood that he/she will be convicted.  *See, e.g.*, *Motamedi*, 767

3   F.2d at 1407 (The Bail Reform Act "neither requires nor permits a pretrial determination that the

4   person is guilty"); *Dang*, 2013 U.S. Dist. LEXIS 112758 (explaining that at a detention hearing

5   the court was not at liberty to presume the conduct alleged constituted criminal conduct).

6          Instead, the weight of the evidence "may be considered only in terms of the likelihood

7   that the person will fail to appear or will pose a danger to any person or to the community."

8   Where, as occurred in the magistrate court during Ms. Maddox's initial detention hearing, the

9   allegations against the defendant are presumed to be both true and to constitute criminal conduct,

10  the "the court impermissibly makes a preliminary determination of guilt" and unconstitutionally

11  converts pretrial detention into substantive punishment in violation of "the Fifth and Eighth

12  Amendment's prohibitions of deprivation of liberty without due process and of excessive bail."

13  *Motamedi*, 767 F.2d at 1403; 1407-08.  Because the weight of the evidence, when coupled with

14  the presumption of innocence is, as a general rule, not particularly probative of the issues

15  relevant at a detention hearing (risk of nonappearance and specific future danger), the Ninth

16  Circuit has repeatedly emphasized "that the weight of the evidence is the least important of the

17  various factors" at a detention hearing.  *Id.* at 1408; *see, e.g., Townsend*, 897 F.2d at 994 (same).

18         In this case, the weight of the evidence speaks to a short period in Ms. Maddox's life

19  which ended abruptly in 2015, and does not set forth a foundation for a particularized future

20  danger to any individual or the community.  Ms. Maddox now has a very stable relationship with

21  Mr. Hall, and she has tremendous support from her family.  She has no criminal history.  An

22  intervening period of well over a year exists between the last contact Ms. Maddox is alleged to

23  have had with the individual in Florida, during which time no illegal conduct has occurred.

24  Instead, during the past year Ms. Maddox met Mr. Hall and has begun to build a life with him,

25  joining their families and sharing a home together.  The fact that Ms. Maddox is accused of

26  engaging in sexually explicit chat conversations and exchanging explicit materials involving

27  minors over a five-week period is not evidence that she presents an identified and articulable

28  *future* threat to anyone.  Moreover, she is presumed innocent, and "innocence can only raise an

1   inference of innocence, not of guilt." *Scott*, 450 F. 3d at 874.

2        Finally, even if the government were to meet its burden of establishing by clear and

3   convincing evidence that Ms. Maddox presents a future danger to a specified individual or the

4   community, it cannot meet its burden of establishing by clear and convincing evidence that the

5   conditions proposed by Pretrial Services are inadequate to reasonably assure the safety of the

6   community, let alone that there are no combination of conditions this Court could fashion that

7   would reasonably assure the safety of the community short of pretrial incarceration. *See, e.g.*,

8   *United States v. Beckett*, 2011 U.S. Dist. LEXIS 49414 (N.D. Cal. 2011) (releasing an individual

9   charged with trafficking methamphetamine based on wire tap evidence, noting that the court's

10   inquiry under § 3142 is not whether the defendant is guilty of the offenses, but whether

11   "considering the factors in section 3142(g) any conditions in section 3142(c) will reasonably

12   assure [the defendant's] appearance and the safety of the community"); *United States v. Sanchez*,

13   2011 U.S. Dist. LEXIS 22395 (C.D. Cal. 2011) (noting that the government's concerns that the

14   defendant would engage in future methamphetamine trafficking, while legitimate, "do not

15   constitute clear and convincing evidence that there are no conditions or combination of

16   conditions that would reasonably assure the safety of the community if Defendant were

17   released"); *United States v. Bright*, 2009 U.S. Dist. LEXIS 5399 (N.D. Cal. 2009) (finding that

18   while the government had met its burden of establishing the defendant "would likely sell drugs

19   and arm himself," there were conditions the court could fashion that would reasonably assure the

20   community's safety from this future threat, and thus pretrial detention was not appropriate).

21        Pretrial Services has concluded based on its individualized assessment of Ms. Maddox,

22   that the safety of the community can be reasonably assured by imposing, among other

23   conditions, the approved third-party custodians, location monitoring, and participation in

24   counselling as recommended and approved by the pretrial services officer.

25        Given the totality of the circumstances, including Ms. Maddox's lack of criminal history,

26   lengthy employment history, tremendous family support, overwhelming ties to the community in

27   the Eastern District of California, lengthy intervening period of positive conduct, and lack of

28   contact with her children or any other children, and, keeping in mind the presumption of

1  innocence and the fact that it is only the rare case in which a defendant qualifies as a member of

2  the "small but identifiable group of particularly dangerous defendants" for whom detention is

3  appropriate, as well as Pretrial's recommendation that Ms. Maddox be released on conditions

4  after interviewing her and assessing her history and characteristics, there are conditions that this

5  Court can fashion that will reasonably assure Ms. Maddox's attendance as required as well as the

6  safety of the community.

7                              **IV.  CONCLUSION**

8          For the reasons stated above, Ms. Maddox's detention violates 18 U.S.C. § 3142, Ms.

9  Maddox respectfully moves this court, pursuant to 18 U.S.C. § 3145(b), for an order revoking the

10 detention order issued June 23, 2017, and releasing her pursuant to the least restrictive conditions

11 necessary to reasonably assure her appearance as required and the safety of the community as

12 identified and recommended by Pretrial Services.

13
                                             Respectfully submitted,
14
                                             HEATHER E. WILLIAMS
15                                           Federal Defender

16      Dated: July 7, 2017                  /s/ *Megan T. Hopkins*
                                             MEGAN T. HOPKINS
17                                           VICTOR M. CHAVEZ
                                             Assistant Federal Defenders
18                                           Attorneys for Defendant
                                             ASHLEY MADDOX
19

20

21

22

23

24

25

26

27

28