PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
Assistant U.S. Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for the
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:17-CR-00167-LJO-SKO |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER** |
| v. | |
| ASHLEY MADDOX, | DATE: |
| Defendant. | TIME CTRM: |

## I.   INTRODUCTION

The United States of America (government) opposes defendant Ashley Maddox's motion, under 18 U.S.C. § 3145(b) (Docket Item 21) to revoke the order for the defendant's detention entered by U.S. Magistrate Judge Barbara A. McAuliffe on June 23, 2017.  The court ordered the defendant detained, as a danger to the community, after an extensive hearing at which the court concluded that there were no conditions that could reasonably ensure the safety of persons and the community.  Because the defendant's motion – filed two weeks after she was ordered detained – presents no new information but instead reiterates arguments made by counsel at the initial detention hearing, this court should not order the defendant's release.  The defendant is a danger to the community, including minor daughter and other young girls, and a risk of flight.

Government's Opposition to
Defendant's Motion to Revoke

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The government filed a criminal complaint against the defendant on June 16, 2017.  The complaint alleges violations of 18 U.S.C. § §  2251(a)(1) and 2252(a)(2) for sexual exploitation of children and receipt or distribution of images of minors engaged in sexually explicit conduct. Docket Item 1.  Homeland Security Investigations (HSI) Special Agent Timothy Kotman supported the complaint with a sworn statement that outlines facts relevant to this prosecution and the defendant's dangerousness.  Agent Kotman reported that his colleagues in Ft. Pierce, Florida were alerted to a suspect near them who was involved in the distribution of child pornography. When law enforcement executed a search warrant at his residence, investigators found two cell phones, several media cards, and a hard drive hidden in the base of a DVD storage cabinet. During a forensic review of these items, an HSI agent found files of child pornography mixed with files of adult pornography, all of which appeared to involve a female, later identified as the defendant.  Docket Item 1, Kotman affidavit.

HSI agents in Florida contacted investigators in Fresno once they learned that the defendant was likely the person who created and transmitted the images of child pornography to the suspect in Florida.  Investigators obtained a California state search warrant for the defendant's residence in Madera County.  While executing the warrant on June 5, 2017, investigators interviewed the defendant.  She said she was not aware of anyone taking any photos of her daughter and stated she had never touched her daughter inappropriately. During this brief interview, Special Agent Kotman observed a distinctive half heart-shaped tattoo and distinctive writing on the defendant's thigh.  Kotman had previously observed these markings in the files containing child pornography provided by HSI Fort Pierce.  He also recognized CV#1 – then in the defendant's residence – as the child depicted in these same files. When he told Maddox about the tattoos in the image files, she stated that she did not want to talk any longer, and the interview was terminated.

The defendant first appeared in federal court in Fresno on June 21, 2017, and the court scheduled a detention hearing for June 23, 2017. Initially the Pretrial Services office recommended that the defendant be detained. The office submitted a supplemental report in advance of the June 23, 2017, hearing that has proposed conditions that could be imposed if the defendant were ordered released. Notably, the supplemental report has significant limiting qualifications that the defendant has not recognized. The Pretrial Services office does not take into account the rebuttal presumptions that the defendant is both a flight risk and a danger to the community. Nor does the Pretrial Services office take into account the "weight of the evidence" against the defendant. The government introduced evidence that the court considered in reaching its conclusion that the defendant is a danger to the community. Docket Items 12-14. The Pretrial Services office did not see or consider this evidence when preparing its supplemental report.

A grand jury returned an indictment on July 13, 2017, that also alleges violations of 18 U.S.C. §§ 2251(a)(1) and 2252(a)(2) for sexual exploitation of children and receipt or distribution of images of minors engaged in sexually explicit conduct. The first charge has a mandatory minimum prison term of 15 years with a maximum term of 30 years while the second charge has a potential prison term of between five and 20 years. For both charges there is a potential lifetime term of supervised release, mandatory registration as a sex offender, a potential fine of $250,000 (each count), and potential penalty assessments totaling $10,200.

### III.   LEGAL PRINCIPLES

Under the Bail Reform Act of 1984, if a district judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The United States Court of Appeals for the Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v.*

*Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f).  A finding that a defendant is a flight risk must be supported by a preponderance of the evidence only. *Motamedi*, 767 F.2d at 1406.

Under 18 U.S.C. § 3142(e)(3)(E) there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. §§ 2251 or 2252(a)(2).  Notably, the presumption is not that just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive ones, that will reasonably assure the safety of any person and the community as well as the defendant's assurance at future court appearances.  In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008),  Judge Reinhart confirmed that this presumption shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. § 3142(f)(2)(B).  Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, Judge Reinhart noted that if a defendant proffers evidence to rebut the presumption of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate.  These factors are: 1.) the nature and circumstances of the offense charged; 2.) the weight of the evidence against the person; 3.) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *United States v. Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g).  As Judge Reinhart emphasized, the "presumption is not erased

when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g).'" *Hir*, citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

## IV. THE DEFENDANT SHOULD REMAIN DETAINED

When this court places the facts of this case into the relevant legal framework, it is apparent that the defendant is both a danger to the safety of persons and the community and a flight risk. The defendant has not rebutted the presumption that there is no combination of conditions that can be fashioned to assure the safety of the community and her future court appearances. A defendant must produce evidence; it is not enough to merely have conditions placed on her freedom. Even if the court were to treat as evidence the proposal to have the defendant's sister and/or boyfriend be a third-party custodian, this would fall short of rebutting the presumption that no combination of conditions will reasonably assure the safety of the community and the defendant's future court appearances. The defendant's sister cannot watch her twenty-four hours each day, since she lives in her own residence and works at a full-time job. Nor can the defendant's boyfriend watch the defendant, since he also works.

The nature and circumstances of the defendant's crimes and her ability to have kept them secret from those who purport to be closest to her underscore the very difficulty of ensuring that the defendant will not commit similar crimes while out of custody. The two offenses with which the defendant has been charged are both categorized as crimes of violence. For count one the mandatory prison term is 15 years with a maximum of 30 years; for count two the term of imprisonment ranges from five to 20 years. The United States Sentencing Guidelines range is likely to be within those ranges, and upon release, the defendant faces a possible lifetime term of supervised release and registration as a sex offender. "Consideration of the nature of the offenses charged involves consideration of the penalties." *United States v. Townsend*, 897 F.2d 989, 995

(9th Cir. 1990).  Few crimes are more serious and have more dramatic and long-lasting impacts on victims than those involving the sexual exploitation of children.  The defendant used messaging services to find and communicate with another adult who also had access to a child.  The defendant confirmed her interest in seeing the other adult abuse his nine year-old daughter, saw the abuse, received images of the abuse, felt bad after seeing it, deleted the images, but reestablished contact with the person and communicated that she wanted to see the young girl be abused again, this time when the victim was awake.  This shows not only a conscious decision to commit her crimes, but an unwillingness or inability to stop herself.  Given that she is facing at least a fifteen-year prison term if convicted for the most serious charge, the defendant certainly presents a significant risk of flight that was not present when she was living in Madera, working at a credit union, and enjoying a relationship with her relatives.  None of the things that were meaningful to the defendant will be available to her in custody, so she understandably has every incentive to avoid returning to custody and presents a significant risk of flight.  *Cf. Townsend*, 897 F.2d at 995 (examining potential maximum sentence on each count sentenced consecutively in evaluating defendant's incentive to consider flight).

The defendant has suggested that "the weight of the evidence speaks to a short period in Ms. Maddox's life which ended abruptly in 2015, and does not set forth a foundation for a particularized future danger to any individual or the community."  Docket Item 21 at 12, lines 18-20.  Of course, we don't know whether the defendant contacted other people after she established the relationship with the person in Florida whom law enforcement recently encountered.  That person was only caught by law enforcement because he was victimizing a young girl online in North Carolina as recently as May of 2017.  He obviously did not stop demonstrating his sexual interest in children.  And the court will note in one of the chat communications – on December 2, 2015 – that the defendant told her friend in Florida "I erased all the vids I had because I was freaked out having them so I haven't seen her yummy little pussy for a while."  This was just

Government's Opposition to
Defendant's Motion to Revoke

6

after the defendant encouraged her friend to transmit images of him molesting his nine year-old daughter. The defendant shared that "I want her to be awake too :) I would love her to be awake so you can actually get those bottoms off her and I can see her beautiful pussy."

Whether or not the defendant has molested any children and/or encouraged other people to molest their children while she watched since she committed the crimes charged in the indictment, it is very clear that the defendant has demonstrated her sexual interest in young girls. She expressed this very clearly when she stated to her friend in Florida that she was tormented by having to be in the same household with seven year-old girls and their "two tiny, amazing pussies." The defendant also told the friend that she "want[ed] to lick your little ones [sic] pussy so bad." The friend had a daughter who was nine years old.




Most adults have fixed and enduring sexual interests and preferences, and there is nothing to indicate that the defendant's sexual interest in children has waned or will change. See Many Researchers Taking a Different View of Pedophilia, LA Times, January 14, 2013 (Attached). Nor is there any evidence that she has done anything to address her unnatural urges by way of counseling or treatment. Given that her conduct was driven by biological and psychological

Government's Opposition to
Defendant's Motion to Revoke

7

forces that do not seem to have been addressed, there is a significant risk that she would repeat her conduct if given the chance.  Indeed, in a chat session on November 24, 2015, the defendant told her friend in Florida – who had shared images of him molesting his nine year-old daughter – that "I always WANT to see it :) lol" ("it" being "a sexy little 9 year olds [sic] pussy :)".  So the risks that the defendant presents are not like those of someone charged with being a felon in possession of a firearm, drug trafficking, or even murder.  Those crimes, and other crimes of violence, are generally not motivated by organic urges.  Unfortunately, the risk associated with the defendant's crimes is that she will gain access to another child and act on her deviant sexual interests.

The suggested conditions in the Pretrial Services report cannot address the risks that the defendant has created, especially since she committed her crimes with technology that can so easily be purchased.  Disposable phones with internet access are relatively inexpensive, and this factor goes to the near impossibility of effectively monitoring the defendant, even if she were confined to her former residence.  There is very little to stop the defendant from acquiring another phone with internet access that would quickly enable her to look for child pornography, create it, and share it.   The government's concern is based on recent experience such as in *United States v. Jack Mootz*, 1:17-cr-00053-DAD-BAM, a case in which the defendant was released on conditions on March 26, 2017, including no internet access.  That defendant was found in violation of conditions on April 24, 2017, and remanded into custody based on his use of an internet-enabled phone.[1]

The Pretrial Services office also has suggested a condition of release that would not comply with 18 U.S.C. § 3141(c)(1) which requires electronic monitoring of any defendant

---

[1] The government offered to examine the phone to corroborate the defendant's assertion that he had not done anything inappropriate on the phone (use of the phone alone was violation conduct), but the defendant declined.

Government's Opposition to
Defendant's Motion to Revoke

8

charged with the types of offenses filed against the defendant.  The Pretrial Services office in Fresno does not have true electronic monitoring, because the monitoring only tells a supervising officer when a defendant is at a residence; it does not provide any information about the person's location when they are not at the residence.  Global Positioning System (GPS) technology has been available for years, but unfortunately the Fresno Pretrial Services office discontinued using GPS technology several years ago.  So any time the defendant were authorized to visit her attorney, attend court, see a doctor, attend a religious service, go to a counseling session, or be absent from her residence for any other approved reason, there is absolutely no way to know whether she had contacted a child or in any other way violated the terms of her release.  Judge Reinhart noted this problem in *Hir* when he echoed concerns by the First Circuit in how ineffective electronic monitoring can be.  It "does not prevent a defendant from committing crimes within the monitoring radius, [and] there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions, and . . . phone monitoring could be evaded by use of cellular and pay phones."  *Hir* at 1092, citing *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990).

But even if GPS monitoring were used by the Fresno Pretrial Services office, the defendant could simply remove her electronic monitor and no one would have any means of tracking her.  This has happened in other cases where defendants have been placed on electronic monitoring for crimes involving the exploitation of minors.  For example, in a New York federal child pornography case in 2013, a defendant on pretrial release cut off his ankle monitor, committed a carjacking, killed a woman, raped her 10 year-old daughter, and then reassembled his monitoring unit.  The crime spree happened before the monitoring company was able to discerned any problem and alerted the Pretrial Services office.  See NY murder-rape suspect removed monitor quickly, Associated Press, March 19, 2013.  That case was not unique as illustrated by *United States v. Gary Collins*, CR-F-13-00031 LJO, a case in which a defendant

Government's Opposition to
Defendant's Motion to Revoke

9

facing child pornography charges before this court was released on conditions including electronic monitoring.  The defendant cut off his monitor, left a note suggesting he intended to commit suicide, and then went missing for several days.  Ultimately, the U.S. Marshal Service was able to rearrest him, but he certainly put the community at risk while he was at large without monitoring.  And after he was arrested for child exploitation charges (initially state charges filed in Stanislaus County), Jack Davis Carter fled to Indonesia, a country with which the United States had no extradition agreement, before the U.S. Marshal Service was able to bring him to court for child exploitation charges in federal court in Fresno.  CR-F-04-5306 AWI.

Overlapping with the nature and circumstances of the defendant's crimes is "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release."  An important consideration is that the defendant has abused her own daughter, created a digital record of that abuse and then shared those images with someone in FL who was caught only because he had been exchanging images of child pornography with another person in a different state.  The defendant has demonstrated complete disregard for the innate bond between a mother and child that should, by its nature, be protective.  Unfortunately the defendant chose to exploit her position of trust, and this is not something that can be restored as easily as saying she's moved on from a brief episode of bad judgment.  Indeed the defendant commented about the "torment" she suffered by having to see her young niece in her apartment, so there were at least three young girls aged 7-9 about whom the defendant expressed her sexual desire.

Someone who has engaged in such serious criminal conduct presents a danger to the community, especially since the seriousness of the conduct escalated very quickly and involved multiple victims.  She has taken no steps since the crimes were committed to mitigate the risk that she would act out again.  This is not a situation where she turned herself in to law enforcement or went to counseling or voluntarily gave up custody of her children.  Judge Reinhart noted in *Hir*

Government's Opposition to
Defendant's Motion to Revoke

10

that the Bail Reform Act was enacted, in large part, to address growing concerns that dangerous defendants were committing crimes while released on bail. Judge Reinhart noted that Congress explained that the "broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release." *Hir*, 517 F.3d 1081, 1089.  Even if the defendant were to attend counseling sessions, she cannot do so without going back into the community. Either obtaining a new phone herself or convincing someone to get her one would be a relatively easy task. Her sex drive is very strong and is biologically driven, so the defendant's situation is not like someone who committed a crime of violence because they needed money or were inflicting retribution. There is a very substantial risk that she will again offend if given the opportunity.

And just as Judge Reinhart noted in *Hir* that the proposed conditions in that case – which were more restrictive in some ways than the proposed conditions in this case – would be ineffective, no conditions here could be fashioned to reasonably assure the safety of the community and the defendant's appearance at future court appearances. Notably, in order to be effective, the conditions depend on the defendant's "good faith compliance." *Hir*, at 1092. Judge Reinhart noted that even the most restrictive conditions can, at times, be "easily circumvented or manipulated." *Id*. Here the defendant was willing to ignore her parental bonds and obligations and most people would consider those stronger and more well-established than those owed to a court. The defendant cannot be trusted to comply with any conditions that might be imposed. The danger that she presents, given how easy it is to obtain a new phone, or to simply remove an ankle monitor, or to deviate from a permitted attorney visit in Fresno or a doctor's visit in Madera, is simply too great. There is, as Judge Reinhart characterized the facts in *Hir*, "an unacceptably high risk that she would not" comply with even the most restrictive conditions that might be fashioned. *Hir*, at 1093.

Government's Opposition to
Defendant's Motion to Revoke

11

Compounding the risks that the defendant presents are the "history and characteristics" of the defendant. She has a prior criminal history (albeit minor), and she has been terminated from employment. She has understandably been emotionally distraught since her arrest, and this does not weigh in her favor. Her most recent boyfriend has written a letter of support for her and offered to act as a third-party custodian. But their relationship has existed for a relatively short time, and presumably he had no insight into the defendant's sexual interest in children. It is unclear whether he has seen the material that the court considered at the previous detention hearing which has been sealed. Docket Items 12-14. The father of her daughter (with whom the defendant has had a longer relationship) apparently considers the defendant a risk to their daughter, because he has obtained a restraining order against the defendant. Although the defendant has argued that her family ties to the area are strong, she is now at risk of not being able to continue the relationships that she developed with those people. Thus, consideration of relevant evidence on this third factor also demonstrates, by clear and convincing evidence, that she should remain detained.

Finally, the "weight of the evidence," is considerable, and it also demonstrates by clear and convincing evidence that the defendant should remain detained. The complaint affidavit outlines just some of that evidence but it alone would provide a sufficient basis to convict her for both charges. The court can and should also consider the sealed exhibits and excerpts from some of the defendant's communications referenced above. Although "the weight of the evidence is the least important of the various factors" under 18 U.S.C. § 3142(g), "the statute requires [the court to] consider the evidence" in terms of the likelihood that the defendant will fail to appear or pose a danger to the community. *Hir*, 517 F.3d at 1090 (*citing Motamedi*, 767 F.2d at 1408). The strong and substantial amount of evidence indicative of defendant's guilt is probative under Section 3142(g)(2) and is a factor that favors the defendant's detention.

```
Government's Opposition to
Defendant's Motion to Revoke
```

### V.	CONCLUSION

The court should find that the defendant has failed to rebut the presumptions that no conditions can be fashioned to reasonably assure the safety of the community and her future court appearances. If the court finds that the defendant has produced sufficient evidence to rebut these presumptions, the court must remember that the presumptions remain in place and need to be considered with all of the other relevant factors. The court should then find, after considering the four statutory factors, that there is clear and convincing evidence that the defendant is a danger to the community and that, certainly by the requisite preponderance standard, there are no conditions that reasonably assure her future appearances for court proceedings. The defendant should remain detained.

Dated: July 17, 2017                                      PHILLIP A. TALBERT
                                                          United States Attorney

                                                 By:      /s/ David L Gappa
                                                          DAVID L. GAPPA
                                                          Assistant U.S. Attorney