HEATHER E. WILLIAMS, #122664
Federal Defender
MEGAN T. HOPKINS, #294141
VICTOR M. CHAVEZ, #113752
Assistant Federal Defenders
Designated Counsel for Service
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: 559-487-5561/Fax: 559-487-5950

Attorneys for Defendant
ASHLEY MADDOX

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-167-DAD-BAM |
| Plaintiff, | DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO REVOKE DETENTION ORDER |
| vs. | |
| ASHLEY MADDOX, | Date: July 24, 2017<br>Time: 10:00 a.m. |
| Defendant. | Judge: Honorable Dale A. Drozd |

Defendant Ashley Maddox hereby files her reply to the government's opposition to her motion to revoke the detention order, which the government filed on July 17, 2017.

### I. Ms. Maddox Is Not Required to Present New Information

The government incorrectly argues in its opposition brief "[b]ecause the defendant's motion … presents no new information but instead reiterates arguments made by counsel at the initial detention hearing, this court should not order the defendant's release." Docket Item 25 at 1:23-26. Unlike a motion for bail review, a motion to revoke a detention order does not require new information be presented to the court. Rather, this Court should review the detention order *de novo* under the Bail Reform Act, 18 U.S.C. § 3141 *et seq. United States v. Koening*, 912 F. 2d 1190, 1191 (9th Cir. 1990).

The information provided and arguments made in support of release in Ms. Maddox's

motion to revoke the detention order present sufficient evidence upon which this Court may order Ms. Maddox released on conditions. In Ms. Maddox's motion, she addresses the rebuttable presumption and discusses at length the factors set forth in 18 U.S.C. §3142(g) as they relate to Ms. Maddox and the proposed conditions of release. Based upon the information presented and the conditions at the Court's disposal, Ms. Maddox should be ordered released.

## II.   The Pretrial Services Office Has Not Changed Its Recommendation for Release Despite the Evidence Introduced by the Government at the Detention Hearing

The government protests that in recommending release, "[t]he Pretrial Services office did not see or consider [the evidence provided at the detention hearing] when preparing its supplemental report." Docket Item 25 at 3:10-12. Although it is true that the Pretrial Services Office was not privy to this evidence (which consisted of online chat conversations purported to be between Ms. Maddox and another individual in Florida) in advance of the hearing, this was due entirely to the government's decision not to provide it to the Pretrial Services Officer, despite making it available to counsel and the Court. Notably, this evidence was largely redundant to what is presented in the affidavit to the Criminal Complaint, which *was* provided to the Pretrial Services Office in advance of the detention hearing. Indeed, the specific, vulgar language contained in the chat sessions was explicitly detailed in paragraph 9 of the affidavit, complete with pictures of the chats pasted below Agent Kotman's descriptions. Docket Item 1 at 4-5.

Moreover, a representative of the Pretrial Services Office was present in court for the entire detention hearing, and was given an opportunity to address the court following the government's presentation of this "new" evidence. The Pretrial Services Officer made a point to correct the record with regard to some of the government's other erroneous arguments, and stood by their recommendation of release upon the conditions proposed in the supplemental report. Accordingly, this Court should have no doubt that the Pretrial Services Office understood the nature of the allegations Ms. Maddox faced and the weight of the evidence against her at the time it recommended her release.

/ / /

### III. Ms. Maddox Has Rebutted the Presumption in this Case

The government appears to assert that Ms. Maddox has not put forth any evidence to rebut the presumption in this case, and instead relies solely on the fact that conditions have been proposed for her release. Docket Item 25 at 5:9-12. This is a bold misreading of Ms. Maddox's motion, which presents ample evidence of her lengthy employment history (which only ended upon the government's disclosure of these charges to her employer), strong ties to the community, lack of any significant criminal history, suitability of the proposed third party custodians and proposed residence, lack of access to or contact with minor children, and the lengthy intervening period of time between the period of alleged conduct and the present wherein there is no evidence of any unlawful activity, whatsoever.

In order to rebut the presumption in this case, Ms. Maddox need only present *some* credible evidence that she does not pose a serious flight risk and will not pose a danger to the community. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Based upon the evidence presented in her motion, Ms. Maddox has indeed rebutted the presumption, thereby leaving the burden of persuasion with the government.

### IV. The Substantial Intervening Period of Lawful Conduct Demonstrates that Ms. Maddox is Both Able and Willing to Abide by the Law

The government insists that Ms. Maddox cannot stop herself from committing crime, based upon their assertion that she engaged in illegal conduct, then expressed remorse, deleted contraband images, and later reconnected with the individual in Florida to engage in additional illegal conduct. Docket Item 25 at 6:4-9. Even if these allegations were true, this merely demonstrates Ms. Maddox's desire, at the time, to continue her relationship with the individual in Florida, which revolved around sharing these contraband images. The government is not in a position to render a professional or scientific opinion about Ms. Maddox's motivation for renewing contact with the individual in Florida. Instead, the government speculates, to their advantage, in a way that is wholly contradicted by the lengthy intervening period of lawful conduct in this case.

The government's own evidence shows that contact with the individual in Florida ended

in December of 2015, when Ms. Maddox not only terminated her relationship with the individual, but also stopped using the application she is purported to have used to exchange contraband. Despite the government's recitation of unknowns regarding her conduct since December of 2015, there is absolutely no evidence that Ms. Maddox continued to possess, receive, distribute, or produce contraband since she terminated her relationship with the individual in Florida, or that she engaged in any other illegal activity. The fact that Ms. Maddox terminated the alleged relationship on her own volition and chose to redirect her energy toward a healthy, stable relationship with her current partner and law-abiding conduct demonstrates her ability to "stop herself" from engaging in unlawful activity.

### V. Location Monitoring in Combination with Other Conditions Proposed Will Reasonably Assure Ms. Maddox's Appearance and the Safety of the Community

The government expresses concern that the location monitoring available in this district is insufficient, based upon the possibility that Ms. Maddox could acquire another phone and seek out child pornography. Docket Item 25 at 8:13-17. It appears that the government wants a guarantee that whichever conditions are imposed upon her release will prevent her from committing future crimes. Guarantees of this kind are neither possible, nor the standard under the Bail Reform Act, which only requires a reasonable assurance of the safety of the community. *See, e.g., Hir*, 517 F.3d at 1092 n.9 ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed . . . . Requiring that release conditions guarantee the community's safety would fly in the teeth of Congress' clear intent that only a limited number of defendants be subject to pretrial detention.") (internal citation omitted).

In order to reasonably assure the safety of the community, the Pretrial Services Office has recommended a robust combination of conditions including location monitoring and home incarceration, two qualified joint-third-party custodians, counselling, and restricting any minor children from visiting or residing at her residence. If the Court is concerned that Ms. Maddox poses a serious risk of acquiring secret cell phones to sneak child pornography while en route on approved travel, such as for court appearances or counselling, an additional condition may be fashioned that Ms. Maddox not depart the residence without a third party custodian or other

4

approved chaperone with her at all times.

The government's presentation of horror-stories involving defendants who have violated their pretrial conditions in other cases, including the article attached to their opposition detailing a particularly tragic occurrence in New York in 2013, are not relevant to the Court's analysis in this case. These worst-case scenarios invite the Court to fall victim to speculation and fear in a case that bears no similarity to those presented, other than the crime of which Ms. Maddox has been accused. This Court should decline to engage in this fear mongering. Rather, the Court should recognize that, as with all types of cases, there are success stories and failures. In the Eastern District of California, the vast majority of individuals released on location monitoring successfully remain on pretrial release and in many cases are able to phase off of the monitors after a sustained period of compliance.

Here, the Court must assess whether, in light of all of the factors in this case, there is any combination of conditions that will reasonably assure Ms. Maddox's appearance and the safety of the community. The Pretrial Services Office has recommended that Ms. Maddox be placed on location monitoring and home incarceration, not a curfew of any sort. Under this condition, Ms. Maddox will be confined to the walls of her home and will only be permitted to leave for specified periods of time for pre-approved court appearances, meetings with counsel, and counselling as recommended by the Pretrial Services Office. Additionally, Ms. Maddox has been recommended to be released to the joint custody of two third-party custodians, one of whom will reside at home with Ms. Maddox and the other who communicates with her on a daily basis. The residence at which Ms. Maddox is recommended to reside while on pretrial release does not have internet access and is out of range for internet signal. Furthermore, Cameron Hall, the other resident and a proposed third-party custodian has taken measures to ensure that no minor children will visit or reside in the home while Ms. Maddox is on pretrial release. Finally, the Pretrial Services Office recommends that Ms. Maddox attend counselling as approved by the Pretrial Services Officer, and will assist Ms. Maddox in enrolling in such counselling. The government in its opposition recognizes the importance of such counselling (which is only available if Ms. Maddox is released) in avoiding future instances of the alleged conduct. This

combination of conditions is more stringent than those imposed in other, similar cases in this district, and is certainly sufficient to reasonably assure Ms. Maddox's appearance at future court hearings and the safety of the community while her case is pending.

### VI. Conclusion

Based upon the foregoing, Ms. Maddox should be released on those conditions proposed by the Pretrial Services Office, in addition to any other conditions the Court deems appropriate.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Dated: July 21, 2017        /s/ *Megan T. Hopkins*
MEGAN T. HOPKINS
VICTOR M. CHAVEZ
Assistant Federal Defenders
Attorneys for Defendant
ASHLEY MADDOX