PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
Assistant U.S. Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for the
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY MADDOX,<br><br>Defendant. | Case No. 1:17-CR-00167-DAD-BAM<br><br>**GOVERNMENT'S MOTION FOR BAIL REVIEW AND DETENTION**<br><br>DATE: September 25, 2017<br>TIME: 2:00 p.m.<br>CTRM: Nine |

## I. INTRODUCTION

The United States of America (government) moves, under 18 U.S.C. § 3142(f)(2), for the defendant's detention. There is newly-discovered evidence that was not known to the government or the court when it most recently addressed the detention issue on July 24, 2017. The government intends to file some of that evidence separately under seal. In addition, a grand jury returned a superseding indictment on September 7, 2017. The new evidence and charges contradict the defendant's statements and emphasis that she had not engaged in any criminal activity since December 2015. The new evidence and charges also reinforce that there are no conditions to adequately mitigate the danger to the community that she presents.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Magistrate Judge Barbara A. McAuliffe, on June 23, 2017, ordered the defendant detained, as a danger to the community, after an extensive hearing at which the court concluded that there were no conditions that could reasonably assure the safety of persons and the community.  Docket Items 7 and 8.

The defendant filed a motion to revoke that decision, and Judge Dale A. Drozd conducted a hearing on July 24, 2017.  The court began that hearing by inquiring whether the defendant had engaged in any molestation or other inappropriate conduct from December of 2015 through the time of her arrest in early June 2017.  Transcript of July 24, 2017, Hearing (Transcript) at 5, lines 12-21.  Defense counsel repeatedly represented that the defendant "has a very lengthy period between the alleged conduct here and today.  And to me, that alone would . . . sufficiently rebut the presumption.  The fact that there is absolutely no evidence that since December of 2015, she's engaged in any illegal conduct, that she departed from that conduct on her own volition, and that she has changed the structure of her lifestyle and show she associates with dramatically at that time." Transcript at 8, lines 3-10.

The court repeatedly reiterated its concern about any inappropriate conduct in which the defendant might have engaged between December 2015 and early June 2016, and defense counsel repeatedly emphasized that the defendant had completely disassociated herself from any criminal activity in December 2015.  For example, the court asked whether there was "any evidence that's been developed that Ms. Maddox has engaged in criminal activity having to do with the exploitation of minors or sexual contact with her own daughter or the niece."  Transcript at 15-16. The court repeated its concern about the "status of any investigation regarding unlawful conduct of any kind in the interim.  Or even troubling conduct in the interim."  Transcript at 20, lines 18-20.  The court went on to note that "the defense has taken the position that, look, judge, since December of 15, there's nothing. . . . it does seem to me that it would not be unreasonable to

2

think that if there was something, we should by this time, four weeks out, have some lead or possibility that, yeah, we're concerned because here's what – you know, here's what we've learned in the interim. That's of issue to me." After defense counsel corrected the record on when the defendant had gone into custody, the court repeated that "those two things continue to concern me." Transcript at 20-21. The court made additional references to its concern about "any suspected conduct that she may have engaged in between December of 2015 and the time of her arrest in June of 2017." Transcript at 33, lines 41-16; Transcript at 24, lines 22-25; Transcript at 37, lines 9-10.

The defendant was present for the hearings in this case and, fully knowing that the district court was intensely interested in any illegal conduct in which she might have engaged after December 2015, let her defense attorney argue facts that the defendant knew were not true. For example, after arguing that she had never created any images that would constitute sexual exploitation of a minor (prior to having seen any of the contraband images in this case), defense counsel again referred to "the very lengthy period of intervening time where there is no evidence that Ms. Maddox engaged in any unlawful conduct, certainly no conduct relevant to these charges, and none whatsoever as far as we're aware of." Defense counsel then argued that the government had no evidence of any misconduct beyond the time alleged in the indictment and again referred to "this lengthy intervening period, which as I said I think is significant and in and of itself could rebut the presumption." Transcript at 40-41.

Defense counsel also argued facts which the government can now prove are not true. Defense counsel opined that the "government seems to allege that there are three victims. I don't see any support for that in the record or what's been argued so far. Arguably there is an alleged victim in Ms. Maddox' daughter and there is an alleged victim in Florida. But no third alleged victim as far as I know." Transcript at 46. The evidence that the government intends to provide under seal confirms that the defendant, on dates later than the dates alleged in the initial

indictment, demonstrated her interest in seeing an additional minor female in Florida be sexually exploited. The defendant had been communicating with an adult male in Florida who had shared images of one minor female with the defendant. On January 5, 2016, the adult male in Florida communicated to the defendant: "And btw, I still have another child lol;) whenever u want to cam with her, just let me know. Haha." The defendant responded: "Yes!! I love when you had her suck your cock". She continued: "I love her little pussy . . .You've showed me a little of it :)" The Florida man replied: "Playing with her clit and licking her pussy. Maybe a finger if I can. I know I have before but I want ti show u more." The defendant responded: "Omg Babe I would die to see you licking her clit God". The Florida defendant responded "Then that's what ima do to her when we Skype ;)" To which the defendant stated, "And you can do that while she's awake and there's light! Lol . . . Good babe I would die". There were additional similar communications between the defendant and her male friend in Florida.

The district court, in its decision, noted that this was a "very close case," but also apparently gave great weight to "the lack of any evidence, at least so far, indicating any continuing conduct or any molestation with respect to her daughter in the last 20 months or so, 18 to 20, since this offense." Transcript at 47-48. The district court, therefore, apparently believed it was quite significant that there was no evidence that the defendant had engaged in any inappropriate sexual contact or activities involving the sexual exploitation of minors since December 2015.

### III. LEGAL PRINCIPLES

Under the Bail Reform Act of 1984, if a district judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The United States Court of

4

Appeals for the Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk must be supported by a preponderance of the evidence only. *Motamedi*, 767 F.2d at 1406.

Under 18 U.S.C. § 3142(e)(3)(E) there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § § 2251 or 2252(a)(2). Notably, the presumption is not that just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive ones, that will reasonably assure the safety of any person and the community as well as the defendant's presence at future court appearances. In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008), Judge Reinhart confirmed that this presumption shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. §  3142(f)(2)(B). Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, Judge Reinhart noted that if a defendant proffers evidence to rebut the presumption of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate. These factors are: 1.) the nature and circumstances of the offense charged; 2.) the weight of the evidence against the person; 3.) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the

community that would be posed by the defendant's release. *United States v. Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g). As Judge Reinhart emphasized, the "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." *Hir*, citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

### IV. THERE IS NEW EVIDENCE THAT CONFIRMS THAT THE DEFENDANT SHOULD BE ORDERED DETAINED.

The government moves to review the current release order, because the government does not believe there any conditions that can adequately assure the safety of the community. The government intends to file separately some of the evidence that was discovered after the district court's release order was entered on July 24, 2017. The government has been diligent in all aspects of investigating this case and noted earlier that it was an ongoing investigation that involves reviewing digital evidence that was seized in two different jurisdictions. A Homeland Security Investigations (HSI) agent trained in computer forensics discovered what he believed to be additional evidence related to the defendant's communications with a defendant who has been charged in federal court in Florida. That agent, based in Florida, quickly contacted a colleague in the Fresno HSI office who took steps to confirm the identity of the defendant, since she had reestablished communication with the Florida defendant using a different account name than had

been used in 2015.[1]

The government's recently-discovered evidence shows that apparently in January 2016 the defendant's friend told her that the "last 4 numbers on your knew kik name 1354… I used to use those numbers for everything.  They were my last 4 of my phone number for like 15 years."  The defendant responded that "It's my work employee number lol  No one knows that lol"  She continued by telling her friend that she missed him "Sooooo much" and she "was a little hurt that we weren't talking lol" in part because "you helped me express my true sick self lol".  Given that the defendant began communicating with her friend in Florida again but with a different user account and/or different username, it is understandable that the evidence would not have been immediately apparent to investigators.  In addition, the evidence that formed the basis for the initial indictment largely was recovered from an SD card that was seized from the defendant's friend in Florida.  Discovering that evidence was less involved than discovering the newer evidence, which resided on a computer hard drive.

The investigation remains ongoing, and it is quite possible, given the total volume of evidence seized as well as the storage capacity of the device on which the most recent evidence was discovered, additional evidence might still be recovered.  But given the obvious and serious nature of the conduct, law enforcement more reasonably acted with diligence in arresting the defendant in early June 2017.  And the decision to release the defendant from custody should be revisited, because the district court did not have the benefit of the newly-discovered evidence but in every way indicated that it was concerned about the conduct in which it is now clear that the defendant engaged.

---

[1] Defense counsel argued to the district court on July 24, 2017, that there was "no indication that Ms. Maddox made any attempt to conceal herself.  In fact, even in the chats purported to be from her that the government has introduced, she's chatting openly notoriously on an application, using a name and email address that had been associated with her for a long time."  Transcript at 23, lines 11-15.

7

## V. CONCLUSION

The government moves for the defendant's detention, and if the defendant objects, the government requests a hearing at which it can present additional evidence and supplement its arguments.

Dated: September 11, 2017            PHILLIP A. TALBERT
                                               United States Attorney

                                   By:     /s/ David L Gappa
                                                    DAVID L. GAPPA
                                                    Assistant U.S. Attorney