HEATHER E. WILLIAMS, #122664
Federal Defender
MEGAN T. HOPKINS, #294141
VICTOR M. CHAVEZ, #113752
Assistant Federal Defenders
Designated Counsel for Service
2300 Tulare Street, Suite 330
Fresno, CA  93721-2226
Telephone: 559-487-5561/Fax: 559-487-5950

Attorneys for Defendant
ASHLEY MADDOX

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  1:17-cr-00167 DAD-BAM |
| Plaintiff, | DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR BAIL REVIEW AND DETENTION |
| vs. | |
| ASHLEY MADDOX, | Date:   September 25, 2017 |
| Defendant. | Time:  2:00 p.m. |
| | Judge: Honorable Stanley A. Boone |

## I.    INTRODUCTION

The Government has moved for a bail review, seeking to detain Ashley Maddox based upon additional evidence relating to the charges set forth in the superseding indictment returned on September 7, 2017.  However, the government's proffered information does not change the fact that the conditions of release set by the district court have been effective and do reasonably assure Ms. Maddox's appearance at court and the safety of the community.  Ms. Maddox opposes the government's motion for the reasons set forth below, and asks this Court to continue her release on the conditions ordered by the District Court, with which she has been fully compliant since her release on July 27, 2017.

//

//

## II.     FACTUAL BACKGROUND

On June 21, 2017 Ashley Maddox made her initial appearance on a criminal complaint charging her with violations of 18 U.S.C. §§2251(a) and 2252(a), and alleging that Ms. Maddox engaged in sexual exploitation of a minor and received and/or distributed sexually explicit material involving a minor.  Ms. Maddox entered not guilty pleas to the two counts filed against her.  At the request of counsel for Ms. Maddox, the detention hearing was scheduled for June 23, 2017.

On June 23, 2017, an initial detention hearing was held in magistrate court.  The Pretrial Services Officer recommended release on conditions, including two potential third-party custodians, Cameron Hall and Jennifer Reeves (Ms. Maddox's boyfriend and sister, respectively), participation in counseling, home confinement/location monitoring, and a number of other conditions such as travel, residency, and employment restrictions.  A rebuttable presumption applied in this case that no condition or combination of conditions will reasonably assure appearance as required and the safety of the community. Ms. Maddox sufficiently rebutted the presumption by way of credible evidence that she has no criminal history, had been employed for the past 8 years until June of this year, has significant ties to the community here in the Eastern District of California, does not have any access to her own or anyone else's children, and has a lengthy intervening period of positive conduct between the alleged period of illegal activity and today.

The court found that Ms. Maddox did not pose a risk of flight, but ordered Ms. Maddox detained on the basis of danger.  Ms. Maddox filed a motion to revoke the detention order, which was argued at a hearing before the district judge on July 24, 2017.  Ms. Maddox presented the same evidence as was presented at the time of the initial detention hearing, with the addition of one exhibit: a letter from proposed third party custodian Cameron Hall notifying the court that the proposed residence would not have any minors residing in it.  Ms. Maddox argued that the presumption had been rebutted and that there existed a combination of conditions of release that would reasonably assure both the safety of the community and her appearance at future hearings.

At the court's request, the government presented the video which the government alleged

to be child pornography produced by Ms. Maddox.  The video, which had not yet been made available to counsel for Ms. Maddox, did not depict any nudity, display of genitals, penetration, or other sexually explicit content.  After viewing the video and hearing argument from both parties, the court determined that Ms. Maddox had rebutted the presumption and that any risk of flight or danger she posed to the community could be mitigated through the conditions proposed by the Pretrial Services Officer.  The district court ordered Ms. Maddox released on a combination of conditions, which included home confinement, location monitoring, two third-party custodians, counseling at the direction of Pretrial Services, and that she not have contact with any minor children, including her own.

Ms. Maddox was released on July 27, 2017 to third-party custodian Cameron Hall.  She has since complied with all conditions of her release, has begun attending mental health counseling as directed, and is scheduled for additional ongoing counseling both through the service provider offered through Pretrial Services and through a secondary provider arranged for by the Federal Defender's Office.

## III.   ARGUMENT

Under the totality of the circumstances, including the presumption of innocence and Ms. Maddox's complete compliance on pretrial release, Ms. Maddox represents neither a serious risk of non-appearance nor a danger to the community.

### A.   *The District Judge Held the Presumption of both Flight Risk and Danger was Rebutted by Evidence Independent of the Intervening Period of Positive Conduct*

The government appears to argue that the district judge released Ms. Maddox based largely, if not solely upon defense counsel's representation that Ms. Maddox had a lengthy intervening period of positive conduct.  While this lengthy intervening period was one of the arguments presented by counsel for Ms. Maddox, her counsel presented a number of other significant factors, which ultimately persuaded the court that the presumption was rebutted, and that conditions could be fashioned to reasonably assure Ms. Maddox's appearance and the safety of the community.  The district judge explained that "the presumption of both flight risk and danger" was rebutted "based upon her history and characteristics, as well as the fact that she

1    continues, despite the charges, to have support from her family and others, including two who

2    are willing to become third party custodians, and her complete lack of any significant prior

3    criminal record…"  Transcript at 47:21-25 and 48:1-2.

4        Ms. Maddox presented more than just some evidence to rebut the presumption, and each

5    of those circumstances recited by the court in rendering its decision continue to be present in this

6    case.  The change in the length of the intervening period from what was previously believed to

7    be 18 months, from December of 2015 to June of 2017, to what is now understood to be 17

8    months from April of 2016 to present, does not contradict the court's reasoning in granting Ms.

9    Maddox's release.  Moreover, Ms. Maddox has demonstrated since the time of her release nearly

10   two months ago that she is willing and able to comply with the conditions ordered by the court,

11   which further rebuts the presumption and militates in favor of her continued release.

12   **B.    The District Judge Released Ms. Maddox After Reviewing the Materials She
        *Allegedly Produced to Evaluate Whether They Were Pornographic in Nature,*

13       *and Confirming That She Had Not "Molested" Her Daughter or Other Victim*

14       At the outset of the hearing on the motion to revoke the detention order, the district judge

15   indicated that there were "two things that [the court had] some questions about," which were "the

16   nature of the photographs and video referred to in the criminal complaint at pages … five and

17   six" and "whether there's any indication in any of those follow up interviews of molestation or

18   other inappropriate conduct" from the time period alleged in the government's charging

19   documents through Ms. Maddox's arrest in June of 2017.  Transcript at 4:2-4 and 5:12-15.  The

20   parties disagreed as to the answer to each question, however both issues were ultimately resolved

21   in Ms. Maddox's favor.  More importantly, each of these issues continue to resolve in Ms.

22   Maddox's favor and support her continued release, even in light of the superseding indictment.

23           a.   **The Photographs and Video at Issue Are Not Sexually Explicit**

24       The district judge stated a specific concern as to whether the videos and images referred

25   to in the government's charging documents as having been produced by Ms. Maddox depicted

26   "sexual molestation" or "whether they are lewd and lascivious or whether they depict - - whether

27   they're pornographic, whether they depict sexual activity."  Transcript at 11:10-16.  The parties

28   disagreed as to what was depicted, neither having viewed the material, and each relying on the

representations of those who had been privy to the contents.[1]  Accordingly, the videos and images were displayed at the hearing to permit the court to draw its own conclusion as to the nature of the materials Ms. Maddox is alleged to have produced.

The government produced a series of images and video, none of which were sexually explicit in nature.  None of the materials displayed the subject's genitalia or depicted penetration, oral copulation, or other pornographic content.  The video which the government insisted displayed contact between Ms. Maddox and her daughter was played multiple times for the court.  The video, which is 8 seconds long, shows what appears to be a child's legs, shorts, and a hand with an index finger running back and forth for a few seconds just above the pubic area.  It is unclear from the video whether contact is being made, and nothing in the video is sexually explicit.

Shortly after viewing the material and hearing further argument for both parties, the district court ruled that the presumption had been rebutted as to both flight and danger.  The court further found that the conditions proposed in the pretrial services report were sufficient "for the most part" to reasonably assure Ms. Maddox's appearance at future hearings and the safety of the community.  Transcript at 48:15-17.  The court added one additional condition that Ms. Maddox provide a $50,000 unsecured appearance bond, co-signed by both third-party custodians.  See Transcript at 49:13-15.  The bond was subsequently executed without issue.

### b.  Ms. Maddox Did Not Molest Her Daughter or Any Other Child

The district judge also inquired as to whether Ms. Maddox's daughter had been interviewed in the course of the investigation, in order to determine if there had been sexual contact between Ms. Maddox and her daughter.  At the time, the government was not sure whether interviews had been conducted.  However, the government had already provided Ms. Maddox with some initial discovery, including a copy of the recorded forensic interview of her daughter from June 7, 2017, two days after Ms. Maddox's arrest, which counsel for Ms. Maddox had reviewed.  Counsel for Ms. Maddox therefore advised the court that over the course of the

---

[1] Ms. Maddox advised her counsel of what she understood to be the video and photographs the government referred to in the charging documents, and the case agent advised the government of his impression of the same.

sixteen-minute interview Ms. Maddox's daughter "denies several times anything unusual happening at the home, having any concerns she wants to express, other than a fear that she doesn't know where her mother is and that she's in foster care at the time." Transcript at 17:3-7. The government subsequently confirmed that "apparently the forensic interview of her daughter was done" and "there was no disclosure." Transcript at 25:2-3.

Although Ms. Maddox's niece was not formally interviewed, Jennifer Reeves, Ms. Maddox's sister and the child's mother, advised counsel that she "was informed by the Madera County agents that her daughter … would not be interviewed because there was no evidence that there was any involvement." Furthermore, she had spoken with her daughter on her own and there had been no disclosure of anything inappropriate taking place. Transcript at 37:16-20.

### C.   *The Lengthy Intervening Period Between the Alleged Conduct and the Present Remains a Compelling Factor Weighing Strongly in Favor of Release*

Ms. Maddox argued at the hearing on the motion to revoke detention that a lengthy period had passed since the alleged conduct in this case, during which Ms. Maddox had disassociated herself from the individual in Florida and began a new, healthy relationship with Cameron Hall (who is currently designated as one of Ms. Maddox's joint third-party custodians.) Counsel for Ms. Maddox relied in good faith on the government's indictment, which set forth an alleged conduct period of November and December, 2015.

Now the government presents new evidence by way of the superseding indictment, filed on September 7, 2017 and not previously disclosed to defense counsel, that Ms. Maddox communicated with the individual in Florida until as late as April of 2016. The government argues that this additional four months of communication, with the same person as originally alleged and not involving any further production of materials on the part of Ms. Maddox, dramatically changes the circumstances under which Ms. Maddox was released. This is simply not the case. The new information does not vitiate the effectiveness of the release conditions imposed by the district court.

At the time of the motion to revoke, and based upon the timeline set forth in the government's charging documents, Ms. Maddox was believed to have ceased communications

with the individual in Florida from December of 2015 through the time of her arrest in June of 2017.  Counsel for Ms. Maddox therefore argued that an intervening period of nearly eighteen months existed, and was a compelling factor weighing in favor of her release.  The superseding indictment adjusts that timeline to April of 2016 through the present, which is an intervening period of just less than seventeen months.  If this had been the established timeline at the time of the hearing on the motion to revoke detention, counsel for Ms. Maddox would have argued an intervening period of fourteen months from April of 2016 to June of 2017, which is still a very lengthy period of intervening time.

> **D.    Because There Exists a Combination of Conditions that This Court Can Fashion that Will Reasonably Assure Ms. Maddox's Appearance as Required and the Safety of the Community, the Bail Reform Act Mandates that this Court Continue Ms. Maddox's Release Pending Trial.**

Ms. Maddox must continue on pretrial release if the presently imposed conditions or any combination of conditions "will *reasonably assure* [her] appearance . . . as required or . . . the safety of any other person or the community." § 3142(b).  *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("The Act mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' 18 U.S.C. § 3142(e).").

> **a.    Ms. Maddox has Rebutted the § 3142(e)(3) Presumption With Credible Evidence that She Represents Neither a Serious Flight Risk Nor a Danger to the Community.**

Pursuant to 18 U.S.C. § 3142(g), this Court must consider the nature and circumstances of the offense charged, including whether the charged offense raises a rebuttable presumption that there are no conditions a court can fashion that would reasonably assure the defendant's appearance and the safety of the community.  Because Ms. Maddox is charged with an offense involving a minor victim under §§2251(a) and 2252(a), there is a rebuttable presumption.  18 U.S.C. § 3142 (e)(3)(E).

However, the presumption is readily rebutted with some credible evidence that the defendant does not pose a serious flight risk and will not pose a danger to the community.  *Hir*,

1   517 F.3d at 1086.  The rebuttable presumption merely creates an initial burden of production on

2   the defendant.  *Hir*, 517 F.3d at 1086.  The burden of persuasion to establish by a clear

3   preponderance of the evidence that an individual poses a serious risk of flight, and by clear and

4   convincing evidence that the defendant poses a particularized future threat to a specific

5   individual or community, remains at all times with the government.  *Id.*

6        Ms. Maddox has rebutted the presumption, and continues to rebut the presumption with

7   all of the same evidence as presented at the time of the motion to revoke detention and recited

8   above.  Moreover, Ms. Maddox has been out of custody on pretrial release for approximately two

9   months and has complied with every condition ordered by the court.  This only further rebuts the

10  presumption in this case, and demonstrates that the conditions set by the district court are

11  effective.

12              **b.  The Government Cannot Satisfy Its Heavy Burden of Establishing that
                There are No Conditions this Court Can Fashion that Will Reasonably
13              Assure the Safety of the Community**

14       The government litters its motion with incendiary language from a series of online chats

15  purportedly between Ms. Maddox and the individual in Florida upon which the superseding

16  indictment is based.  The government argues that the weight of the evidence, specifically what is

17  contained in these chat messages, should compel the court to reverse the district judge's release

18  order and detain Ms. Maddox.  However, the weight of the evidence "may be considered only in

19  terms of the likelihood that the person will fail to appear or will pose a danger to any person or to

20  the community."  Because the weight of the evidence, when coupled with the presumption of

21  innocence is, as a general rule, not particularly probative of the issues relevant at a detention

22  hearing (risk of nonappearance and specific future danger), the Ninth Circuit has repeatedly

23  emphasized "that the weight of the evidence is the least important of the various factors" at a

24  detention hearing.  *Id*. at 1408; *see, e.g., Townsend*, 897 F.2d at 994 (same).

25       In this case, the weight of the evidence speaks to a short period in Ms. Maddox's life, and

26  does not set forth a foundation for a particularized future danger to any individual or the

27  community.  The new information presented by the government does not involve any additional

28  materials produced or distributed by Ms. Maddox.  Instead, it is another string of chat

conversations, similar to the chat conversations that were presented at the original detention hearing and the motion to revoke, during which the individual in Florida sends additional materials purported to be child pornography to Ms. Maddox. The fact that Ms. Maddox is accused of engaging in sexually explicit chat conversations and exchanging explicit materials involving minors seventeen months ago is not evidence that she presents an identified and articulable *future* threat to anyone.

Ms. Maddox was released on a battery of conditions ordered by the district judge, all of which she has complied with for the past two months. She resides in an approved residence with her third-party custodian, Mr. Hall. Ms. Maddox has had no contact with any minor children, including her own children. She has complied with the conditions of home confinement and location monitoring, has notified her pretrial services officer and obtained approval in advance of all travel, and has been accompanied by a third-party custodian (either Ms. Reeves or Mr. Hall) on all approved visits to the Federal Defender's Office and to her counseling appointments. Ms. Maddox does not possess a cell phone or have access to the internet, and has had a landline installed for communication with her family, friends and counsel.

Given the totality of the circumstances, including Ms. Maddox's lack of criminal history, lengthy employment history, tremendous family support, overwhelming ties to the community in the Eastern District of California, lengthy intervening period of positive conduct, and lack of contact with her children or any other children, compliance with the conditions of her release for the past two months, as well as Pretrial's continued recommendation that Ms. Maddox remain released on the same conditions, this court should continue Ms. Maddox's pretrial release.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## IV.  CONCLUSION

2

Nothing in the government's new information undermines the conclusion that the

3

conditions of release ordered by the district court reasonably assure Ms. Maddox's appearance in

4

court and the safety of the community.  Therefore, the government's motion for bail review and

5

detention should be denied.

6

7                                                             Respectfully submitted,

8                                                             HEATHER E. WILLIAMS
                                                              Federal Defender

9            Dated: September 18, 2017               /s/ *Megan T. Hopkins*
                                                              MEGAN T. HOPKINS
10                                                            VICTOR M. CHAVEZ
                                                              Assistant Federal Defenders
11                                                            Attorneys for Defendant
                                                              ASHLEY MADDOX
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Maddox Opposition to Gov Motion for Bail Review