PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
Assistant U.S. Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for the
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:17-CR-00167-DAD-BAM |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW** |
| v. | |
| ASHLEY MADDOX, | DATE: October 11, 2017 |
| Defendant. | TIME: 2:00 p.m.<br>HON: Barbara A. McAuliffe<br>CTRM: Eight |

**I.      INTRODUCTION**

The United States of America (government) opposes the defendant's motion for bail review and release from custody. Magistrate Judge Barbara A. McAuliffe ordered the defendant detained as a danger to the community on June 23, 2017. The defendant has, at different times, argued that she has not committed any crimes, that she did not engage in any illegal or inappropriate behavior after December 30, 2015, and that she is not a danger to the community or a risk of nonappearance at future court proceedings. Because there are no material changed circumstances since she was ordered detained on September 22, 2017, and the defendant has failed to rebut the presumptions that she is a danger to the community and risk of flight, the court should deny her motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Magistrate Judge Barbara A. McAuliffe, on June 23, 2017, ordered the defendant detained, as a danger to the community, after an extensive hearing at which the court concluded that there were no conditions that could reasonably assure the safety of persons and the community.  Docket Items 7 and 8.

The defendant filed a motion to revoke that decision, and Judge Dale A. Drozd conducted a hearing on July 24, 2017.  The court began that hearing by inquiring whether the defendant had engaged in any molestation or other inappropriate conduct from December of 2015 through the time of her arrest in early June 2017.  Transcript of July 24, 2017, Hearing (Transcript) at 5, lines 12-21.  Defense counsel repeatedly represented that the defendant "has a very lengthy period between the alleged conduct here and today.  And to me, that alone would . . . sufficiently rebut the presumption.  The fact that there is absolutely no evidence that since December of 2015, she's engaged in any illegal conduct, that she departed from that conduct on her own volition, and that she has changed the structure of her lifestyle and who she associates with dramatically at that time."  Transcript at 8, lines 3-10.

The court repeatedly reiterated its concern about any inappropriate conduct in which the defendant might have engaged between December 2015 and early June 2016, and defense counsel repeatedly emphasized that the defendant had completely disassociated herself from any criminal activity in December 2015.  For example, the court asked whether there was "any evidence that's been developed that Ms. Maddox has engaged in criminal activity having to do with the exploitation of minors or sexual contact with her own daughter or the niece."  Transcript at 15-16.  The court repeated its concern about the "status of any investigation regarding unlawful conduct of any kind in the interim.  Or even troubling conduct in the interim."  Transcript at 20, lines 18-20.  The court went on to note that "the defense has taken the position that, look, judge, since December of 15, there's nothing. . . . it does seem to me that it would not be unreasonable to

2

think that if there was something, we should by this time, four weeks out, have some lead or possibility that, yeah, we're concerned because here's what – you know, here's what we've learned in the interim. That's of issue to me." After defense counsel corrected the record on when the defendant had gone into custody, the court repeated that "those two things continue to concern me." Transcript at 20-21. The court made additional references to its concern about "any suspected conduct that she may have engaged in between December of 2015 and the time of her arrest in June of 2017." Transcript at 33, lines 41-16; Transcript at 24, lines 22-25; Transcript at 37, lines 9-10.

The defendant was present for the hearings in this case and, fully aware that the district court was intensely interested in any illegal conduct in which she might have engaged after December 2015, let her defense attorney argue facts that the defendant knew were not true. For example, after arguing that she had never created any images that would constitute sexual exploitation of a minor (even before she had reviewed any of the contraband images in this case), defense counsel again referred to "the very lengthy period of intervening time where there is no evidence that Ms. Maddox engaged in any unlawful conduct, certainly no conduct relevant to these charges, and none whatsoever as far as we're aware of." Defense counsel then argued that the government had no evidence of any misconduct beyond the time alleged in the indictment and again referred to "this lengthy intervening period, which as I said I think is significant and in and of itself could rebut the presumption." Transcript at 40-41.

Defense counsel also argued facts which the government has since proven are not true. Defense counsel opined that the "government seems to allege that there are three victims. I don't see any support for that in the record or what's been argued so far. Arguably there is an alleged victim in Ms. Maddox' daughter and there is an alleged victim in Florida. But no third alleged victim as far as I know." Transcript at 46. The evidence that the government provided under seal on September 11, 2017, confirms that the defendant, on dates later than the dates alleged in the

3

initial indictment, demonstrated her interest in seeing an additional minor female in Florida be sexually exploited. The defendant had been communicating with an adult male in Florida who had shared images of one minor female with the defendant.  On January 5, 2016, the adult male in Florida communicated to the defendant: "And btw, I still have another child lol;) whenever u want to cam with her, just let me know. Haha."  The defendant responded: "Yes!! I love when you had her suck your cock".  She continued: "I love her little pussy . . .You've showed me a little of it :)"  The Florida man replied: "Playing with her clit and licking her pussy.  Maybe a finger if I can.  I know I have before but I want ti show u more."  The defendant responded: "Omg  Babe I would die to see you licking her clit  God".   The Florida defendant responded "Then that's what ima do to her when we Skype ;)"  To which the defendant stated, "And you can do that while she's awake and there's light! Lol . . . Good babe   I would die".  There were additional similar communications between the defendant and her male friend in Florida.

The district court, in its decision on July 24, 2017, noted that this was a "very close case," but also apparently gave great weight to "the lack of any evidence, at least so far, indicating any continuing conduct or any molestation with respect to her daughter in the last 20 months or so, 18 to 20, since this offense." Transcript at 47-48.  The district court, therefore, apparently believed it was quite significant that there was no evidence that the defendant had engaged in any inappropriate sexual contact or activities involving the sexual exploitation of minors since December 2015.

The government noted at the initial detention hearing (and at the hearing in district court) that this case involves an ongoing investigation that has required reviewing digital evidence that was seized in two different jurisdictions.  After the district court ordered the defendant's release, a Homeland Security Investigations (HSI) agent trained in computer forensics discovered what he believed to be additional evidence related to the defendant's communications with a defendant who has been charged in federal court in Florida.  That agent, based in Florida, quickly contacted

a colleague in the Fresno HSI office who took steps to confirm the identity of the defendant, since she had reestablished communication with the Florida defendant using a different account name than had been used in 2015.[1]

In January 2016 the defendant's friend in Florida told the defendant that the "last 4 numbers on your knew kik name 1354… I used to use those numbers for everything.  They were my last 4 of my phone number for like 15 years."  The defendant responded that "It's my work employee number lol  No one knows that lol"  She continued by telling her friend that she missed him "Sooooo much" and she "was a little hurt that we weren't talking lol" in part because "**you helped me express my true sick self lol**" (emphasis supplied).  Given that the defendant began communicating with her friend in Florida again but with a different user account and/or different username, it is understandable that the evidence would not have been immediately apparent to investigators.  In addition, the evidence that formed the basis for the initial indictment largely was recovered from an SD card that was seized from the defendant's friend in Florida.  Discovering that evidence was less involved than discovering the newer evidence, which resided on a computer hard drive.

The investigation of the defendant's crimes remains ongoing, and it is quite possible, given the total volume of evidence seized as well as the storage capacity of the device on which the most recent evidence was discovered, additional evidence might still be recovered.  But given the obvious and serious nature of the conduct, law enforcement more reasonably acted with diligence in arresting the defendant in early June 2017.  And although a district court judge ordered the defendant's release on July 24, 2017, that was based on a record that has since been

---

[1] Defense counsel argued to the district court on July 24, 2017, that there was "no indication that Ms. Maddox made any attempt to conceal herself.  In fact, even in the chats purported to be from her that the government has introduced, she's chatting openly notoriously on an application, using a name and email address that had been associated with her for a long time." Transcript at 23, lines 11-15.

supplemented to reveal more evidence of the defendant's dangerousness.

### III. LEGAL PRINCIPLES

Under the Bail Reform Act of 1984, if a district judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The United States Court of Appeals for the Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk must be supported by a preponderance of the evidence only. *Motamedi*, 767 F.2d at 1406.

Under 18 U.S.C. § 3142(e)(3)(E) there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § § 2251 or 2252(a)(2). Notably, the presumption is not just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive ones, that will reasonably assure the safety of any person and the community as well as the defendant's presence at future court appearances. In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008), Judge Reinhart confirmed that this presumption shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. § 3142(f)(2)(B). Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, Judge Reinhart noted that if a defendant proffers evidence to rebut the presumption

6

of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate. These factors are: 1.) the nature and circumstances of the offense charged; 2.) the weight of the evidence against the person; 3.) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g). As Judge Reinhart emphasized, the "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." *Hir*, citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

### IV.  THERE IS NO NEW EVIDENCE THAT COMPELS THE DEFENDANT'S RELEASE FROM CUSTODY.

The defendant has portrayed herself as the victim of one of her third-party custodians and suggested that releasing her to a different third-party custodian would reasonably assure the safety of the community. The government has interviewed the former third-party custodian, Cameron Hall, and he denies that he was verbally or physically abusive to the defendant. He has represented that the defendant became increasingly stressed as a result of the case pending against her. This was particularly true after the superseding indictment was returned and it became

apparent that new evidence established that the defendant's arguments were without foundation and contradicted by facts.  Mr. Hall has indicated that even before he contacted Pretrial Services, the defendant had been interested in living somewhere other than his residence.  Mr. Hall has stated that Maddox often yelled at him, argued with him, left his residence at least once without authorization from her supervising pretrial services officer, and threw a trophy at Mr. Hall.

## V.        CONCLUSION

The defendant remains a danger to the community and unacceptable risk of nonappearance at future court appearances, so she should remain detained.

Dated:  October 10, 2017                         PHILLIP A. TALBERT
                                                 United States Attorney

                                         By:    /s/ David L Gappa
                                                 DAVID L. GAPPA
                                                 Assistant U.S. Attorney