HEATHER E. WILLIAMS, #122664
Federal Defender
MEGAN T. HOPKINS, #294141
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-5700

Attorneys for Defendant
ASHLEY MADDOX

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ASHLEY MADDOX,<br><br>　　　　Defendant. | Case No. 1:17-cr-0167-DAD<br><br>DEFENDANT'S FORMAL OBJECTIONS TO PRESENTENCE REPORT; MOTION TO CORRECT PRESENTENCE REPORT; EXHIBIT A<br><br>Date:　November 4, 2019<br>Time:　10:00 a.m.<br>Judge:　Hon. Dale A. Drozd |

For the reasons specified below, and any others that may arise during her sentencing hearing, defendant Ashley Maddox hereby objects to the Presentence Report ("PSR") in her case, and moves to correct it.

DATED: October 21, 2019　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　HEATHER E. WILLIAMS
　　　　　　　　　　　　　　　　　　　　　　Federal Defender

　　　　　　　　　　　　　　　　　　　　　　/s/ *Megan T. Hopkins*
　　　　　　　　　　　　　　　　　　　　　　MEGAN T. HOPKINS
　　　　　　　　　　　　　　　　　　　　　　Assistant Federal Defender
　　　　　　　　　　　　　　　　　　　　　　Attorney for ASHLEY MADDOX

## I. OBJECTION TO THE GUIDELINES CALCULATION

The Presentence Report ("PSR") calculates a total offense level of 39, based upon the application of United States Sentencing Guidelines ("USSG") § 2G2.1(d), which only applies where more than one minor victim is exploited in the course of a defendant's conduct. When applicable, § 2G2.1(d) treats each exploited minor as a separate and distinct count of conviction, and the multiple count adjustment under USSG § 3D1.4 is applied. In this case, the multiple count adjustment resulted in an offense level of 42, and a total offense level of 39 after a reduction for acceptance of responsibility was applied.

Ms. Maddox objects to the application of § 2G2.1(d) and § 3D1.4 as there is only one minor victim who was subjected to sexual exploitation in this case. Although Ms. Maddox sent images of her own daughter to the man in Florida (Scott Trader), none of those images depicted sexually explicit conduct or constitute child pornography. The description of the video file in the PSR at paragraph 9 is inaccurate. The video file does not depict "rubbing" of the minor's vaginal area, and in fact does not clearly depict any physical contact with the minor. The Court viewed this video file in connection with Ms. Maddox's Motion to Revoke the Magistrate's Detention Order, and determined at that time that the video did not depict "molestation."[1]

Accordingly, the guidelines should be calculated based upon the single minor victim involved, as follows:

|  |  |
|---|---|
| Base offense level | 32 |
| 2G2.1(b)(1) | +4 |
| 2G2.1(b)(2)(A) | +2 |
| 2G2.1(b)(6)(B)(ii) | +2 |
| Acceptance of Responsibility | -3 |

---

[1] At the July 24, 2017 hearing on Ms. Maddox's motion to revoke the detention order, the Court was focused on whether or not the case involved "sexual molestation" or whether the images and videos involved "are lewd and lascivious or whether they depict - - whether they're pornographic, whether they depict sexual activity." Dkt. 33: July 24, 2017 Transcript at 11:10-16. The government proffered the video file referenced in paragraph 9 of the PSR, and the Court viewed the file at the hearing. After viewing the file, the Court found that it did not depict molestation or sexual activity and ordered Ms. Maddox released on a combination of pretrial conditions. *See* Transcript at 49:13-15.

**Total Offense Level		37**

A total offense level of 37 corresponds with an advisory guideline range of 210-262 months. Ms. Maddox objects to the miscalculation of the guidelines in the PSR, as well as to the references to child pornography/sexually explicit conduct contained in paragraphs 8-9, 11, and 40-52 of the PSR and asks that this language be stricken.

## II.   OBJECTION TO THE $5,000 ASSESSMENT PURSUANT TO THE JUSTICE FOR VICTIMS OF TRAFFICKING ACT

Ms. Maddox objects to the inclusion of a $5,000 assessment provided for under the Justice for Victims of Trafficking Act of 2015. Ms. Maddox was found to be indigent at the time of her initial appearance in June of 2017, and has since been unemployed and has further depleted any financial assets she once had, including a meager savings account. Ms. Maddox faces a 15-year mandatory minimum sentence, which will place her in her mid-to-late 40's at the earliest, upon release. The marketability of a person of that age is considerably less than what Ms. Maddox enjoyed when she obtained her most recent employment in her mid-20's. Her age at re-entry, coupled with a conviction of this nature and the internet access restrictions that will be part of Ms. Maddox's supervised release should be expected to severely limit her employability and future earning potential.

Ms. Maddox does not possess any significant financial assets and is not expected to inherit or otherwise come by any substantial financial resources such that she would not be indigent, as she is now, upon her release. The Justice for Victims of Trafficking Act of 2015 excludes indigent persons from the application of the assessment. Accordingly, the $5,000 assessment should not be applied to Ms. Maddox, who is indigent at this time and can reasonably be expected to remain indigent upon her release from custody.

## III.   OBJECTION TO THE RECOMMENDED $50,000 FINE

Although the probation officer did not include a recommendation for a fine in the draft PSR, upon the government's request for a $50,000 fine and over Ms. Maddox's objection to the propriety of the government's request, a recommendation for the same has now been added to the final PSR.

The government's request, to which probation acquiesced without any independent analysis and over its original determination, was improper. The Local Rule permits informal objections to

the PSR that address statements of fact, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the PSR.  See L.R. 460(e).  Any argument relating to the ultimate recommendation of the probation officer must be reserved for the District Court at the time of sentencing.  Nevertheless, the government included this request in its informal objections and improperly influenced probation to change its sentencing recommendation to include a fine.

Ms. Maddox objects to the recommended fine as she is indigent and does not have an ability to pay a fine.  The Ninth Circuit has repeatedly held that the facts contained in the PSR may be used to support a finding of a defendant's inability to pay. *See e.g.*, *United States v. Robinson*, 20 F.3d 1030 (9th Cir. 1994); *United States v. Schubert*, 957 F.2d 694 (9th Cir. 1992).  Moreover, a defendant's representation by court-appointed counsel is a significant indicator of inability to pay a fine. (USSG § 5E1.2, Application Note 3).

Here, the PSR details Ms. Maddox's lack of financial assets, supporting a finding that she does not have the ability to pay a fine.  Ms. Maddox is represented by court-appointed counsel because at the outset of this case, in June of 2017, she was determined to be indigent.  Since that time, Ms. Maddox has only further depleted her already very limited financial resources.  Ms. Maddox's employment prospects upon release from custody following a 15-year mandatory minimum sentence and under the constraints of her felony conviction and the limitations imposed by supervised release are grim.  It is unreasonable to find that she will have an ability to pay such a fine in over a decade with no evidence to suggest that she will be in a better financial position at that time.

Additionally, the imposition of a fine is generally meant to ensure the disgorgement of any gain from an offense and to increase the punitive nature of a sentence.  Here, Ms. Maddox did not stand to gain anything financially from the offense, and is facing an already extremely punitive 15-year mandatory minimum sentence.  As such, the imposition of a fine in addition to the lengthy custodial sentence is not warranted.  Even if the Court were to determine that *some* fine were appropriate in this case, certainly a $50,000 fine is excessive.  The probation officer has made a separate determination that a downward variance is appropriate in this case regarding the custodial sentence, and a downward variance should also be applied to any fine the Court determines

necessary.

### IV.    OBJECTION TO SPECIAL CONDITION 8

As it is currently written, Special Condition 8 does not permit Ms. Maddox to "possess, own, use, view, or read any material depicting and/or describing sexually explicit conduct involving adults… that are deemed inappropriate by the defendant's probation officer…" The wording of this specific prohibition within Special Condition 8 is substantively unreasonable, and Ms. Maddox therefore objects to Special Condition 8 as it is currently written. Ms. Maddox has no objection to the condition's prohibition against the possession etc. of materials involving minors.

First, as the probation officer writes in the response to Ms. Maddox's informal objection to Special Condition 8, probation is unable to determine whether the restriction of adult pornography is appropriate until *after* the probation officer meets with Ms. Maddox and a sex-offense-specific treatment provider to discuss Ms. Maddox's specific risks associated with viewing pornography. As the probation officer explains, in some cases where a defendant does not exhibit "a sexual interest in minors, viewing adult pornography may not be a risk factor that needs to be addressed."

**[UNDER SEAL]**

There is no evidence to support a finding that Ms. Maddox has a sexual interest in minors, either in the assessment that was performed or in her offense history.[2] Therefore, the restriction must be removed from Special Condition 8 at this time as, per the probation officer's response, the requisite factual basis to support the condition is lacking.

Second, the condition that Ms. Maddox not possess, view, etc. *adult* pornography is not sufficiently tailored to accomplish one of the statutory objectives under § 3583(d) without a greater deprivation of Ms. Maddox's liberty than is reasonably necessary. The Ninth Circuit "has long held that a term of supervised release is part of a defendant's sentence. . . and, like imprisonment, restricts a defendant's liberty and fundamental rights." *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006). There are strict statutory safeguards in place that must be satisfied before a district court can impose a particular condition in a particular case for the particular defendant at issue. *Id.* at 569. A

---

[2] Ms. Maddox has no prior criminal history.

discretionary condition of supervised release must advance certain objectives set forth under 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d); *see, e.g.*, *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010).

Specifically, "supervised release conditions are permissible *only* if they are reasonably related to the goals of deterrence, public protection and rehabilitation." *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006). If a court determines that the proposed condition of supervision is reasonably related to one of the aforementioned objectives, the court must then ensure that the condition is narrowly tailored to involve "'*no greater* deprivation of liberty than is reasonably necessary' to meet those purposes." *Id.* (emphasis in original). And because "supervised release conditions put a defendant's liberty at stake," *id.*, the "government bears the burden of showing 'that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release.'" *United States v. Evans*, 833 F.3d 1154, 1161 (9th Cir. 2018) (quoting *Weber*, 451 F.3d at 559).

When it comes to imposing discretionary conditions, such as that contained in Special Condition 8, here, there is no such thing as a one size fits all condition. Because "§ 3583(d)(1) requires that conditions of supervised release be 'reasonably related' to 'the nature and circumstances of the offense and the history and characteristics of the defendant,'" the assessment of conditions must be individualized. *Weber*, 451 F.3d at 559, 566 (requiring evidence that the disputed condition "is reasonably necessary for the *particular* defendant based upon his specific psychological profile.") (emphasis in original). In looking at the facts of this case and the history and characteristics of Ms. Maddox, there is no justification for prohibiting her use of legal adult materials. Per Dr. Geisler's report[3], a risk assessment was performed resulting in a finding that Ms. Maddox presents very little (if any) risk of recidivism. This case represents aberrant behavior on Ms. Maddox's part, and there is no evidence that her use of adult pornography led to the commission of this offense. A condition as restrictive as this cannot be justified by the record in this case.

---

[3] *See* Exhibit A: Psychological Evaluation and Report by Dr. Richard Geisler – Filed Under Seal.

Third, the condition is written in such a way as to render it unconstitutionally overbroad and vague. The breadth of materials that could potentially be covered would include personal sexual devices with explicit packaging, graphic novels with sexual content, or even explicit romance novels. Even if this Court determines that the condition is not substantively unreasonable, it nevertheless should be held to be unconstitutional as written. Any rehabilitative or deterrent effect it could have must be balanced against the serious First Amendment concerns that are raised by such a restriction. *See United States v. Voelker,* 489 F.3d 139 (3d Cir. 2007). Special Condition 8 is overbroad in violation of Ms. Maddox's First Amendment rights, and far from addressing those concerns, the delegation of authority to the probation officer renders the Condition unconstitutionally vague and violates the Constitution's prohibition against the delegation of Article III judicial authority.

While individuals on supervised release do not have an absolute right to view sexually explicit material, any infringement on their First Amendment right must be very carefully tailored to infringe no more of the defendant's constitutional right than necessary to accomplish the mandate of § 3583(d). *See, e.g., United States v. Wagner,* 872 F.3d 535, 542 (7th Cir. 2017) ("Because adult pornography, unlike child pornography, enjoys First Amendment protection, a ban on its access is only appropriate where it is reasonably necessary to assist the defendant's rehabilitation or to protect the public."); *Taylor,* 796 F.3d at 793 ("Adult pornography, unlike child pornography, enjoys First Amendment protection, and so we must be especially cautious when considering a ban on possessing adult pornography") (internal quotations omitted); *United States v. Kelly,* 625 F.3d 516, 520 (8th Cir. 2010) ("Notwithstanding broad discretion of the court to fashion special conditions of supervised release, we are particularly reluctant to uphold sweeping restrictions on important constitutional rights," such as a condition restricting the defendant's access to materials containing nudity or sexually explicit conduct).

Not only is Special Condition 8 overbroad, "[t]o the extent that its breath is unclear, it is [also] unconstitutionally vague." *United States v. Loy,* 237 F.3d 251, 267 (3d Cir. 2001). As the Ninth Circuit has explained, "allowing the probation officer an unfettered power of interpretation . . . would create one of the very problems against which the vagueness doctrine is meant to protect, *i.e.,* the delegation of basic policy matters to policemen for resolution on an ad hoc and subjective basis."

*United States v. Evans*, 833 F.3d 1154, 1164 (internal quotations omitted). Leaving it up to the probation officer to determine whether Ms. Maddox has violated Special Condition 8 based on the probation officer's personal view of what constitutes "inappropriate" material would create the same problem the Supreme Court addressed in *Coates v. Cincinnati*, 402 U.S. 611 (1971) where, notwithstanding an individual's First Amendment right to assemble, the city of Cincinnati passed an ordinance making it unlawful to assemble "in a manner annoying to persons passing by." *Id.* at 611. The Supreme Court held that "[c]onduct that annoys some people does not annoy others," and thus the ordinance was "unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." *Id.* at 614. Just like conduct that annoys some people does not annoy others, descriptions of sexual explicit conduct between adults considered appropriate by some probation officers will not be considered appropriate by others. Accordingly, Ms. Maddox objects to the restriction regarding *adult* pornography in Special Condition 8 and requests that the language be amended to strike the restriction.

## V.   OBJECTION TO SPECIAL CONDITION 11

Ms. Maddox objects to Special Condition 11 only insofar as it requires her participation in a polygraph examination as a component of sex-offender treatment. Due to Ms. Maddox's unique mental health conditions, polygraph examinations are particularly stress-inducing and she cannot be expected to produce accurate results in testing in this manner. Given the inability to ensure the veracity of the results, this method of treatment is inherently unreliable, and inappropriate in this case. Moreover, polygraph examinations are generally unreliable in measuring truthfulness and are generally inadmissible in court for this same reason.

Although the probation officer writes in the response to Ms. Maddox's informal objection that the polygraph examination is a tool probation uses to "satisfy the statutory requirements to keep informed as to the conduct and condition of [Ms. Maddox]," there is no reason that the probation officer cannot employ other tools for this same purpose. By way of example, the probation officer can request updates from Ms. Maddox's treatment provider regarding their counselling and treatment sessions, or individually interview Ms. Maddox regarding her conduct and condition. Given the

inherent unreliability of the polygraph tool, these alternative methods will be just as useful to the probation officer, if not more so, and will avoid subjecting Ms. Maddox to a component of treatment that is unreasonably difficult for her to comply with given her mental health condition. As such, Ms. Maddox requests that Special Condition 11 be revised to eliminate the use of polygraph testing as a component of treatment or supervision.

### VI.  REQUEST TO SUSPEND DRUG TESTING

Ms. Maddox does not have a prior history of substance abuse and has not recently used any controlled substance. Drug use was not a factor in the offense conduct, and does not pose a threat to Ms. Maddox's successful re-entry. Therefore, Ms. Maddox requests the suspension of the drug testing condition.

### VII.  CONCLUSION

For the reasons stated above, and any others that may arise on hearing, Ms. Maddox respectfully requests that the Court sustain her objections.

DATED: October 21, 2019

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/ *Megan T. Hopkins*
MEGAN T. HOPKINS
Assistant Federal Defender
Attorney for ASHLEY MADDOX