HEATHER E. WILLIAMS, CA SBN #122664
Federal Defender
MEGAN T. HOPKINS, CA SBN #294141
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone: (916) 498-5700
Fax: (916) 498-5710

Attorney for Defendant
ASHLEY MADDOX

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ASHLEY MADDOX,<br><br>Defendant. | Case No. 1:17-cr-00167-DAD-BAM<br><br>**DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS C-E**<br><br>Judge: Hon. Dale A. Drozd<br>Date:  November 4, 2019<br>Time:  10:00 a.m. |

Defendant Ashley Maddox hereby submits her sentencing memorandum for the Court's consideration prior to imposing a sentence. Attached to this memorandum are a number of exhibits, including a sentencing video and a report regarding a psychological evaluation and risk assessment of Ms. Maddox. Ms. Maddox asks the Court to sentence her to the mandatory minimum of fifteen years, followed by five years of supervised release.

**SENTENCING MEMORANDUM**

Ashley Maddox has known little other than pain and loneliness in her life. Beginning as early as age five and continuing throughout her childhood, Ashley has been the victim of sexual abuse at the hands of various men than came in and out of her mother's life. Ashley's mother did nothing to protect her, as she was consumed with drug and alcohol addiction. Ashley's father was largely absent from her life until her teenage years, when he finally stopped using

drugs and made space for her in his life.  By then, Ashley had already been victimized by several men and was struggling with mental health issues, including severe depression.  She never received treatment for her childhood trauma or ongoing mental health needs.

**[UNDER SEAL]**

As exhibited in the sentencing video, Ashley feels tremendous remorse for what she allowed herself to do and say in the course of her relationship with Trader.  She doesn't recognize herself in the chat messages and recoils at the thought of what she encouraged in him, while convincing herself it was all a fantasy.  Of course, it was not a fantasy.  As Ashley has come to accept, the conduct she was encouraging and pretending to enjoy was the sexual abuse of Trader's children, and other unknown minors.  There is no way to adequately measure the guilt Ashley carries for what she has done.  She in no way denies what she said or did with Trader, or with the other individual who she contacted to obtain videos to send to Trader (as discussed in Dr. Geisler's report).  As Ashley's Aunt Donna writes, Ashley's remorse did not begin when she was indicted in this case, but rather was consuming her even just a few months after she ended her relationship with Trader.[1]  Her painful acceptance of her words and actions, and the shame she carries, is only compounded by the resurgence of her own traumatic experiences, long repressed, that this case has brought back to life.

During the course of this case, Ashley has talked about the sexual abuse she has endured for the first time since her childhood.  In reviewing the court documents and photograph of Gary Cooper[2], Ashley was forced to confront one of the most significant sources of her trauma.  She was transported back to the moment when this man, Cooper, who was a father-figure for Ashley who she trusted, violated her repeatedly.  She relived the moment where this hulking man who was over six feet tall and weighed more than 400 pounds[3] reached under her clothes to touch her vagina.  Although this was not the first time Ashley had been molested, it was, for her, the most difficult to accept and overcome.  She now has to accept that the same deep violation of trust that she experienced as Cooper abused her, is what she has done to her own daughter by

---

[1] *See* Exhibit E: Letter from Donna West.
[2] Exhibits C-D.
[3] *See* Exhibit C.

Maddox Sentencing Memorandum                -2-

photographing her and making her a part of Trader's collection. The cycle of abuse she has allowed to continue is not lost on Ashley.

It is precisely because of Ashley's ability to accept her role in the cycle of abuse and feel the shame and pain of what she has done, that the Court can be confident that she will not repeat this mistake again. Ashley now understands how critical counselling and treatment are for her, and how deep the damage lies within her that still needs to be addressed and to heal. All of that repressed pain has come to the surface, and she is able to confront it and deal with it in ways she has never before.

During her term of incarceration, as much as possible, and certainly in the years to follow, Ashley intends to focus on herself and the treatment she needs to be a stronger person and to recover from the trauma of her past. Ashley is requesting a recommendation for placement at the BOP women's facility in Carswell, Texas which offers a program called "The Resolve." The Resolve is a non-residential treatment program for female inmates, using psycho-educational and cognitive behavioral groups to address psychological and interpersonal difficulties precipitated by trauma. The program includes workshops and skills groups targeted at coping with trauma and individual and group therapy to help with cognitive processing. Ashley believes that this program will help her tremendously while in custody, and will help her transition into treatment upon commencement of supervision.

## §3553(A) FACTORS WARRANT A DOWNWARD VARIANCE

The United States Code states that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."[4] In determining an appropriate sentence, the court must consider 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to provide just punishment, afford deterrence, protect the public from future harm, and provide the defendant with needed treatment in the most effective manner; and 3) the kinds of sentences available to the court; 4) the sentencing guideline range; 5) pertinent policy statements; 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have

---

[4] *See* 18 U.S.C. §3553(a)(1)-(7).

been found guilty of similar conduct; and 7) the need to provide restitution to victims of the offense.[5]  Here, nearly all of these factors warrant a downward variance the mandatory minimum term of imprisonment in Ashley's case.

*Nature and Circumstances of the Offense and History and Characteristics of Ms. Maddox*

Ashley would not have been involved in the instant offense were it not for the tragic circumstances of her childhood, which was marred with trauma stemming from neglect and repeated sexual abuse and resulted in multiple mental health conditions that left Ashley vulnerable to the manipulation of people like Scott Trader.  Despite a childhood that can only be described as a prolonged nightmare, Ashley tried to adjust to a "normal" adulthood and raise her children in a loving, supportive home.  Even when she was suffering from crippling depression and self-loathing, Ashley tried to hide her inner-demons from her family and pretend to be the poster-mom she believed her children deserved.  The façade of a successful working mom was, eventually, more than Ashley could maintain, and she succumbed to her depression and pervasive need for the validation of a relationship.

Scott Trader, initially, felt like the answer.  He was kind and complimentary, and he came back.  Unlike the swaths of men who had used and abandoned Ashley, Trader seemed to genuinely care for her.  She fell hard for him, as he'd hoped she would, and when he asked her to step (far) outside of her comfort zone and exchange child pornography with him as part of a "sexual fantasy/role play," Ashley convinced herself it was what she needed to do.  As Trader pulled her down deeper and deeper into his scheme, Ashley agreed to send photos of her daughter, although in her mind they were just enough to satisfy Trader without her daughter needing to know about the photographs or exposing her daughter to abuse.  It was a thin needle to thread. Eventually it became clear that the only way to satisfy Trader would be to molest her own daughter.  This she could not bring herself to do, and the offense conduct, as well as the relationship Ashley was clinging to, came to an end.

Ashley moved on to a new relationship with a man named Cameron Hall.  As was the case with nearly every relationship Ashley has had, it escalated quickly and, although Cameron

---

[5] *See* 18 U.S.C. §3553(a)(1)

1  was physically and emotionally abusive to her, Ashley moved herself and her family in with him
2  and focused on a "new life" after the depressive period that brought Trader into her life.  Ashley
3  no longer had anything to do with the possession, viewing, or creation of child pornography,
4  although she never stopped carrying the guilt and shame for what she had said and done over the
5  short but intense relationship she had with Trader.
6        Apart from her brief involvement with Trader, Ashley has never engaged in any criminal
7  conduct and this case represents completely uncharacteristic and aberrant behavior.  She has no
8  prior criminal history[6].  Ashley was a victim of repeated childhood physical, emotional and
9  sexual abuse and survived extreme poverty, neglect, and exposure to pervasive drug abuse.
10 **[UNDER SEAL]**  Ms. Maddox's personal history and characteristics, as well as the unusual
11 nature and circumstances of the offense in this case, warrant a downward variance to the
12 mandatory minimum sentence of fifteen years.

13 *The Need for the Sentence to Provide Just Punishment, Deter Criminal Conduct, Protect the*
14 *Public, and Provide Ms. Maddox with Effective Treatment*

15       With treatment, which Ashley is eager to engage in, she does not pose any future threat to
16 the public.  **[UNDER SEAL]**
17       In Dr. Geisler's professional opinion, Ashley presents a low risk for re-offense, and is in
18 need of treatment. **[UNDER SEAL]**  Therefore the longer the term of incarceration, the longer
19 Ashley will be precluded from engaging in effective treatment for her unique condition.
20       Given that Ashley does not pose a significant risk of re-offense and in light of the
21 recommended treatment plan being one which is only available through community providers
22 outside of the prison environment, a sentence no greater than what is legally required is
23 appropriate.  Ashley does not require further deterrence or incapacitation in order to make this
24 her first and last offense, and should be supported in obtaining the necessary treatment for
25 successful reentry as soon as possible.

---

[6] PSR pages 12-13 confirm that Ms. Maddox has no prior criminal history whatsoever, including arrests or uncharged conduct, before the instant case.

*The Need to Avoid Unwarranted Sentencing Disparities*

Ashley's case is very unusual; unlike any case this counsel has seen in the sex-offense context. Having no sexual interest in minors herself, Ashley's participation in the offense was aimed solely at maintaining Scott Trader's interest in her. When the relationship ended, so did Ashley's involvement with child pornography. She has a documented history of childhood trauma, including sexual abuse, and suffers from multiple comorbid mental health disorders. She poses very little risk of recidivism according to the risk assessment tools available, and has no prior criminal history. There have been a host of cases, nationwide, and including in this district, where a defendant's involvement in a child-pornography offense was so limited or so heavily mitigated that it warranted a downward variance to a probation or time-served sentence[7]. A similar downward variance would be appropriate here, but for the mandatory minimum sentence required by statute. Accordingly, a sentence at the mandatory minimum is appropriate in this case, given that the Court does not have the discretion to sentence below fifteen years.

---

[7] *See United States v. Shore*, No. 06-CR-00335 (E.D. Cal. 2007) (defendant was a victim of molestation); *United States v. Morrison*, No. 08-CR-167 (E.D. Cal. July 18, 2011) (defendant was 70 years old and government agreed to sentence); *United States v. Teays*, No. 09-CR-532 (E.D. Cal. 2012) (defendant had been the victim of sexual abuse as a child and was socially withdrawn); *United States v. Helbig*, No. 08-CR-30052 (D. Mass. 2009) (defendant was immature and demonstrated a lack of judgment, deep contrition and understanding of the seriousness of the offense, lack of risk of harm to children, and particularly strong family support); *United States v. LaFrance*, No. 02-CR-81048 (E.D. Mich. 2005) (involving a young defendant who went to trial in a case dealing with exchanged images); *United States v. Camiscione*, 04-CR- 594 (N.D. Ohio June 24, 2010) (as modified on Aug. 19, 2010) (defendant had epileptic seizures and there was no evidence that he presented a risk to children); *United States v. Jones*, No. 04-CR-1840 (D.N.M. 2004) (defendant had Asperger's syndrome which contributed to his role in the offense); *United States v. Machmer*, No. 04-CR-097 (E.D. Va. 2005) (defendant had significant social skill development issues which contributed to his role in the offense); *United States v. Bailey*, 369 F.Supp.2d 1090 (D. Neb. 2005)(defendant had significant family obligations and possession of child pornography was temporary); *United States v. Miller*, No. 05-CR-00974 (N.D. Ill. 2006) (defendant possessed a very small amount of material, with only five illegal videos and an additional thirty-two deleted illegal images); *United States v. DeHaven*, No. 08-CR-31 (N.D. Iowa 2009) (defendant had social anxiety disorder and a strong work history); *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (defendant would benefit from continued psychological treatment with his doctor); *United States v. Saenz*, No. M-05-CR-877 (S.D. Tex. 2011) (defendant had been abused as a child); *United States v. Boyd*, No. 06-CR-20243 (E.D. Mich. 2006) (defendant with severe social deficits); and *United States v. Ramos*, No. 08-CR-30034 (D. Mass. 2010) (defendant had no criminal history and had suffered from major depression over many years).

*The Need to Provide Restitution to the Victim*

Ashley has agreed to provide restitution to the victim(s) as determined by the Court. At this time, it is unknown if there is any restitution to be ordered. If there is ultimately a restitution order, the sooner Ms. Maddox can return to the workforce, the sooner she will be able to make meaningful payments towards the restitution amount. As such, a sentence of no more than the mandatory minimum of fifteen years is appropriate.

**CONCLUSION**

"In order to rise from its own ashes, a phoenix first must burn" – Octavia E. Butler. Ashley Maddox is ready to rise up and begin a new chapter focused on healing and reconciliation. Her primary focus will be on getting the treatment she should have been offered decades ago, to address the deep-seeded trauma of her past and create new pathways for her future. But for the mandatory minimum in this case, Ashley would be asking for the opportunity to begin that treatment immediately. There is, however, a mandatory minimum sentence of fifteen years that Ashley has no choice but to accept as a consequence of her role in this case. She therefore respectfully asks the Court to sentence her to no additional time than that which is legally required, and to fashion conditions of supervision that take into account her low risk of recidivism and need for mental health and post-trauma counselling.

Ashley Maddox further requests a recommendation by the Court that she be placed at the BOP women's facility in Carswell, Texas and that the Court further recommend her participation in The Resolve program at that facility.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: October 28, 2019         */s/ Megan T. Hopkins*
                               MEGAN T. HOPKINS
                               Assistant Federal Defender
                               Attorney for Defendant
                               ASHLEY MADDOX